**NORTHWEST G.F. MUTUAL
INSURANCE COMPANY,
Plaintiff and Appellant,**

v.

**Ray NORGARD, Jean Norgard,
Defendants,**

**R.A. and K.A., individually, and on behalf
of L.A.A., a minor, Defendants and
Appellees.**

Civ. No. 930354.

Supreme Court of North Dakota.

June 15, 1994.

Thomas O. Smith, of Zuger Kirmis & Smith, Bismarck, for plaintiff and appellant. Appearance by Patricia E. Garrity.

William P. Harrie of Nilles, Hansen & Davies, Ltd., Fargo, for defendants and appellees.

VANDE WALLE, Chief Justice.

Northwest G.F. Mutual Insurance Company (Northwest) appealed from a summary judgment in favor of defendants Ronald and Kimberly Anderson (pseudonyms) and Jean Norgard, requiring Northwest to defend and indemnify Jean Norgard in an underlying tort action. We reverse.

Jean Norgard operated a home day care business at the Norgard residence in Casselton, North Dakota. Jean and her husband Ray purchased homeowners insurance from Northwest. Ray is the named insured on the policy, and all relatives residing in the Norgard household are also insureds. The policy provides, in pertinent part:

"COVERAGE E—Personal Liability

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1.  pay up to our limit of liability for the damages for which the insured is legally liable, and
2.  provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent...."

The Norgards also purchased insurance coverage for Jean's day care, at an additional premium. Under the Home Day Care Coverage Endorsement, Northwest provides coverage for "bodily injury and property damage arising out of home day care services regularly provided by an insured and for which an insured receives monetary or other compensation." Coverage under the Home Day Care Coverage Endorsement is limited, however, by the following exclusion (sexual molestation exclusion):

"[T]he bodily injury and property damage coverage provided under this endorsement does not apply:
a.  to bodily injury or property damage arising out of sexual molestation, corpo-

ral punishment or physical or mental abuse inflicted upon any person by or at the direction of an insured, an insured's employee or any other person involved in any capacity in the day care enterprise...."

During the month of October 1988, Ray Norgard allegedly engaged in sexual contact with L.A.A., the Anderson's four-year-old daughter, while the child was under Jean's supervision at the day care. Ray was later convicted of gross sexual imposition, in violation of section 12.1–20–03, NDCC.

The Andersons, individually and on behalf of their daughter, brought a civil action for damages against both Ray and Jean Norgard. According to the complaint, the child and her parents have suffered permanent and severe emotional and psychological injury, requiring on-going counseling and treatment. The Andersons allege a number of grounds for relief against Ray, including sexual assault and battery and negligent and intentional infliction of emotional distress. Significantly, the Andersons further allege that Jean breached a duty to use reasonable and due care in the supervision and care of the child and that Jean negligently failed to prevent Ray's sexual contact with the child.

Northwest subsequently instituted this declaratory judgment action in district court, naming the Norgards and the Andersons defendants and seeking a determination of its obligations to the Norgards under the Norgards' homeowners policy. Northwest asserts that it owes no duty to indemnify or defend either Ray or Jean Norgard, because the injuries arose out of sexual molestation by Ray, a risk specifically excluded from coverage.

The Andersons [1] concede that Ray Norgard is disqualified from coverage due to the sexual molestation allegations, but argue that the sexual molestation exclusion does not affect Jean Norgard's coverage. The Andersons emphasize that, under the endorsement's Severability of Insurance provision (severability clause), each insured must

1.  The Norgards and Andersons separately filed answers to Northwest's complaint. However, the Norgards neither appeared nor filed a brief with this court regarding this appeal.

be regarded as having separate insurance coverage. The severability clause provides:

"Severability of Insurance. This insurance applies separately to each insured except with respect to the Limit of Liability. Therefore, this condition will not increase the Annual Aggregate Limit of Liability regardless of the number of insureds."

The Andersons assert that, due to the severability clause, the term "an insured" in the sexual molestation exclusion refers only to the person seeking coverage—in this instance, Jean. Thus, they say, when determining Jean's coverage, Ray is not "an insured" and the policy does not exclude coverage for Jean for Ray's acts. Furthermore, the Andersons argue, the claims against Jean were alleged to have "arisen out of" Jean's negligence, not sexual molestation; thus, the exclusion for injuries "arising out of sexual molestation" does not affect Jean's coverage.

On cross-motions for summary judgment, the district court decided that the severability clause and sexual molestation exclusion, when read together, were ambiguous and that the policy could reasonably be interpreted as affecting only the coverage of the molester. Construing the ambiguity to provide Jean coverage, the court granted summary judgment in favor of the Andersons. Northwest appealed.

Our review of a summary judgment is guided by the following principles:

"Under Rule 56, N.D.R.Civ.P., a summary judgment should be granted only if it appears that there are no issues of material fact or any conflicting inferences which may be drawn from those facts. The party seeking summary judgment has the burden to clearly demonstrate that there is no genuine issue of material fact. In considering a motion for summary judgment, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence to determine whether summary judgment is appropriate. The court must view the evidence in a light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence."

*Hart Const. Co. v. American Family Mut. Ins.*, 514 N.W.2d 384, 388 (N.D.1994); *Ellingson v. Knudson*, 498 N.W.2d 814, 817 (N.D.1993).

The interpretation of an insurance policy is a question of law, fully reviewable on appeal. *Hart Const., supra; State Farm Fire and Cas. Co. v. Sigman*, 508 N.W.2d 323 (N.D. 1993); *Continental Cas. Co. v. Kinsey*, 499 N.W.2d 574 (N.D.1993). Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. NDCC § 9–07–03; *Continental Cas. Co., supra.* Generally, we attempt to ascertain the intent of the parties through the language of the contract itself. NDCC § 9–07–04; *Continental Cas. Co., supra.* To the extent practicable, we give effect to every provision of the contract. NDCC § 9–07–06; *Continental Cas. Co., supra.* Unambiguous language will be given its clear meaning; NDCC § 9–07–02; *State Farm v. LaRoque*, 486 N.W.2d 235 (N.D.1992); we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. *Continental Cas. Co., supra; Aid Ins. Services, Inc. v. Geiger*, 294 N.W.2d 411 (N.D.1980).

■■■ We regard insurance policies as adhesion contracts, *Continental Cas. Co., supra*, and therefore, in applying the rules to resolve ambiguities, we balance the equities against the insurer, i.e., in favor of providing coverage to the insured. *Id.* Furthermore, if the rules for interpreting a written contract do not remove uncertainty, the language of the contract is to be construed most strongly against the party who drafted the contract. NDCC § 9–07–19; *Walle Mut. Ins. Co. v. Sweeney*, 419 N.W.2d 176 (N.D. 1988). The determination of whether a contract is ambiguous is a question of law. *State Farm Fire and Cas. Co. v. Sigman, supra.* Contract language is ambiguous if it can be reasonably construed as having at least two alternative meanings. *Id.* We consider whether a person not trained in the law or in the insurance business can clearly understand the language. *Continental Cas. Co., supra; Aid Ins. Services, Inc. v. Geiger, supra.*

Both parties agree that the severability clause creates separate and independent insurance contracts for each insured. The parties' disagreement concerns the interplay between the severability clause and the sexual molestation exclusion. We observe that the jurisdictions that have attempted to reconcile severability clauses and exclusionary clauses have not done so uniformly. *See generally,* Norman E. Risjord & June M. Austin, *"Who Is 'The Insured' " Revisited,* 28 Ins.Couns.J. 100 (1961); *see also,* Allan E. Korpela, Annotation, *Validity, Construction, and Application of Provision in Automobile Liability Policy Excluding From Coverage Injury or Death of Employee of Insured,* 48 A.L.R.3d 13.

Illustrative of the divergent views are *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158 (1986) and *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748 (Colo.1990). In *Worcester,* the Massachusetts Supreme Court determined that a homeowners policy obligated the insurance company to defend and indemnify the insureds (the Marnells) when the Marnells were sued for negligently supervising their minor son, who killed an individual while driving while intoxicated. The homeowners policy specifically excluded coverage for injuries arising out of the ownership or use of a motor vehicle owned or operated by any insured. The minor son was an insured under the policy's omnibus clause. The company argued that, because the Marnells' son was an insured, the motor vehicle exclusion was applicable and the company had incurred no obligations in regard to the fatal traffic accident.

The court disagreed, concluding that the severability clause was determinative:

"We agree that without the severability provision a literal reading of the motor vehicle exclusion by itself precludes the Marnells from coverage under the policy because Michael Marnell, an insured, owned and operated the motor vehicle involved in the fatal accident. But the severability of insurance clause makes coverage available to Richard and Ellen Marnell nonetheless. . . .

"[T]he severability of insurance clause . . . requires that each insured be treated as having a separate insurance policy. Thus, the term 'insured' as used in the motor vehicle exclusion refers only to the person claiming coverage under the policy. Since it is undisputed that neither [parent] owned or operated the motor vehicle that struck the intestate, the [exclusionary clause] does not preclude [the Marnells] from obtaining coverage. . . ." 496 N.E.2d at 160–61.

*See also, Premier Ins. Co. v. Adams,* 632 So.2d 1054 (Fla.App. 5th Dist.1994) [following *Worcester* ]; *Catholic Diocese of Dodge City v. Raymer,* 251 Kan. 689, 840 P.2d 456 (1992) [determining that "an insured", coupled with a severability clause, means only the individual seeking coverage under the policy]; *American Nat. Fire Ins. v. Fournelle Est.,* 472 N.W.2d 292, 294 (Minn.1991) ["severability demands that policy exclusions be construed only with reference to the particular insured seeking coverage."]; *Northwestern Nat. Ins. Co. v. Nemetz,* 135 Wis.2d 245, 400 N.W.2d 33 (App.1986) ["an insured", coupled with severability clause, is ambiguous; intentional acts exclusion held not to apply to "innocent" insured].

Conversely, in *Chacon v. American Family Mut. Ins. Co., supra,* parents of a ten-year-old boy sought coverage under their homeowners policy after the boy was involved in acts of vandalism causing extensive damage to school property. The minor qualified as an insured under the policy, which contained a severability clause. The insurer argued that the parents nonetheless were excluded from coverage under the policy's intentional acts exclusion, which provided that personal liability coverage would "not apply to bodily injury or property damage . . . which is expected or intended by any insured."

The Colorado Supreme Court held that, under the policy, the boy's intentional acts barred the parents' coverage. The court found "the reasoning of the majority of courts more persuasive than that of *Worcester,* [*supra,*] because it considers and gives effect to all the policy provisions and recognizes that an insurance policy is a contract

between the parties which should be enforced in a manner consistent with the intentions expressed therein." 788 P.2d at 752. The *Chacon* court determined that the mutual intention of the parties was expressed by the clear and unambiguous language of the exclusion; the intentional acts of one insured would bar coverage for all insureds, despite the severability clause.

We have considered the varying views regarding the interplay of severability clauses and exclusionary clauses, and we find them instructive. Relying on *Worcester*, many courts have found severability clauses to create ambiguities and have construed the policies against insurance companies; we believe Northwest rolls the dice by insisting that the policy is clear on its face and by not attempting in the policy itself to more carefully reconcile the severability clause and the exclusions.[2] We recognize that if an ambiguity is not resolved by application of the rules of contract interpretation, we must construe the ambiguous provision in favor of the insured.

However, the ambiguity here is resolved by applying the rules for interpreting contracts, contained in NDCC Chapter 9–07. Determinative is the unique language of this exclusion; the exclusion does not pertain only to the acts of an insured, but also to the acts of "an insured's employee or any other person involved in any capacity in the day care enterprise...."[3]

Under sections 9–07–03 and 9–07–04, NDCC, we attempt to give effect to the mutual intention of the parties as expressed by the language of the contract. The sexual molestation clause is clear on its face: no

coverage is provided where anyone connected with the operation of the day care commits an act of sexual molestation on one of the children. The policy clearly and specifically reflects the parties' intention to place these risks outside the scope of coverage.

Section 9–07–12 directs that a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. The circumstances under which the policy was made is clear. The increase in legal actions involving sexual abuse of children by adults who are not strangers to the children, i.e., parents, relatives or caretakers, is dramatic. The policy clearly and specifically places these risks outside the scope of coverage.

As between the two clauses, the sexual molestation exclusion is a particularly tailored provision that excludes any coverage for specific actions of specific individuals, whereas the severability clause is a more general provision concerned with who is covered. The rules of contract interpretation are akin to the rules for interpreting statutes, *compare* NDCC Chapter 1–02 *with* NDCC Chapter 9–07; we conclude that a provision such as the exclusion dealing specifically with sexual molestation of children prevails over the more general severability clause. Moreover, "[t]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the ... insureds. The purpose is not to negate bargained-for exclusions which are plainly worded." *National Ins., Etc. v. Lexington Flying Club*, 603 S.W.2d 490, 492 (Ky.App.1980).

---

**2.** Northwest argues that any uncertainty is removed by the choice of articles, i.e., whether the clause refers to *"an* insured" or *"the* insured". In addition to the sexual molestation exclusion, the policy contains an intentional acts exclusion which bars coverage for damage or injury arising out of the intentional acts of *"the* insured". The insurance company hypothesizes that *"the* insured" refers only to the individual seeking coverage. By contrast, it argues, *"an* insured" (as appears in the sexual molestation exclusion) unambiguously refers not only to the individual seeking coverage but also to any other insureds under the policy. Thus, it asserts, Ray's status as an insured bars Jean's coverage under the sexual molestation exclusion. We doubt that a layperson would agree that the choice of articles alone

renders either exclusion free from ambiguity. *See Shelter Mut. Ins. Co. v. Brooks*, 693 S.W.2d 810 (Mo.1985) [*"the* insured", when coupled with severability clause, is ambiguous]; *Catholic Diocese of Dodge City v. Raymer*, 16 Kan.App.2d 488, 825 P.2d 1144 (1992) [*"an* insured", coupled with severability clause, is ambiguous], *aff'd* 251 Kan. 689, 840 P.2d 456 (1992). We decline to base our construction of the sexual molestation clause on the distinction between the articles.

**3.** Although Northwest primarily focuses on Ray's status as "an insured", *see* note 2, *supra*, its complaint and its argument are broader in scope.

Similarly, section 9–07–17 provides that "[r]epugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause subordinate to the general intent and purposes of the whole contract." To construe the severability clause to provide coverage in these circumstances is repugnant to the plainly-worded exclusion. The severability clause is subordinate to the sexual molestation exclusion.

We conclude that the application of these rules "clearly indicate that the parties, particularly the insured, contemplated no coverage," *Walle Mut. Ins. Co. v. Sweeney, supra* at 181 [VandeWalle, J., concurring specially], where the named insured himself, rather than a stranger to the day care, commits an act of sexual molestation. The contract may be a contract of adhesion, *Continental Cas. Co., supra,* but we will not find coverage where to do so would be perverse to a clearly stated exclusion. Ray is not a stranger to the day care; the day care was operated in the house in which Ray lived and was present day to day. Under the contract, Ray's acts of sexual molestation bar coverage for anyone, including Jean.

The Andersons assert that the exclusion is nonetheless inapplicable to Jean because the injuries giving rise to the lawsuit "arose out of" Jean's alleged negligence, not sexual molestation. In other words, the Andersons assert that the pleaded cause of action should determine coverage under the exclusion.

We believe the sexual molestation exclusion at issue unambiguously dictates the opposite conclusion. The focus of this exclusion is the injury, not the pleaded cause of action. *Cf.* 7A Appleman, *Insurance Law and Practice,* § 4500 (Berdal ed. Supp.1993) ["On the ground that coverage turns on the cause of injury, rather than on the legal theory asserted against the insured, a number of courts have held that negligent entrustment claims are precluded by the policy's automobile exclusion."] and cases cited therein; *Farmers Ins. Gp. v. Nelsen,* 78 Or.App. 213, 715 P.2d 492 (1986); *contra Catholic Diocese of Dodge City v. Raymer, supra.* Jean's alleged failure to adequately supervise the child allegedly facilitated or resulted in the acts of sexual molestation. But for Ray's acts of molestation, however, no liability could result to Jean. Under the clear and ordinary use of the language, the injuries "arose out of" sexual molestation. *Cf. Houg v. State Farm Fire and Cas. Co.,* 509 N.W.2d 590 (Minn.App.1993) [exclusion for "liability resulting from any actual or alleged conduct of a sexual nature" held applicable to negligent employment and negligent supervision actions]. We decline the Andersons' invitation to synthesize an ambiguity where none exists.

We reverse.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.