901 A.2d 419 (2006)
386 N.J. Super. 343
Linda ARGENT, individually and as guardian ad Litem of Vincent Argent, an infant, Plaintiff-Respondent,
v.
Linda BRADY, Joseph Brady, Michael *420 Brady[1] and Melissa Brady,[2] Defendants-Respondents/Third-Party Plaintiffs,
v.
New Jersey Manufacturers Insurance Company, Appellant/Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 2006.
Decided June 27, 2006.
*421 Kathleen S. Murphy argued the cause for appellant (Connell Foley, attorneys; Ms. Murphy of counsel, Ms. Murphy and Catherine G. Bryan on the brief).
James B. Graziano argued the cause for respondent/third-party plaintiff Michael Brady (Graziano, Piasecki, Whitelaw & Simko, attorneys; Mr. Graziano on the brief).
David Sapiro, East Brunswick, counsel for plaintiff (Sapiro & Gottlieb, attorneys) relies on the brief filed on behalf of respondent, Michael Brady.
Karen Quinn Sopko, counsel for respondent/ third-party plaintiff Melissa Brady (Sherman & Viscomi attorneys) relies on the brief filed on behalf of respondent, Michael Brady.
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
In this homeowner's insurance coverage action, we must determine whether the policy's business pursuits exclusion applies to the resident son of the named insureds, thereby barring any obligation by the insurer to defend or indemnify him from alleged liability for injuries sustained by an infant when bitten by the son's dog while the infant was receiving day care provided by the son's mother, a named insured.
When on premises owned by Linda and Joseph Brady and under the care of Linda Brady, Vincent Argent, a minor, was bitten in the face by a dog. Suit was filed by Linda Argent on behalf of herself and her son against the Bradys. The Bradys sought a defense and indemnification from their homeowner's carrier, New Jersey Manufacturers Insurance Company (NJM). When NJM denied coverage on the basis of the policy's business pursuits exclusion, the Bradys instituted a third-party declaratory judgment action against their carrier. On motion for summary judgment, the motion judge found an issue of fact to exist as to whether Linda Brady was engaged in the business of providing day care services, since there was a dispute as to whether she was being paid for such services or just reimbursed for her *422 expenses when she accepted Argent's weekly payment on behalf of Vincent.[3]
Because discovery disclosed that the dog may have been owned by the Bradys' son Michael, who lived with them, an amended complaint was filed by Argent in her dog bite case naming him as a defendant. When Michael proffered his defense to NJM, it denied coverage to him, as well, as the result of the business pursuits exclusion, despite the fact that Michael was not personally engaged in any business allegedly conducted by his mother. Michael has also filed a claim against NJM in this litigation.
In answers to the amended complaint, both the parents and Michael denied ownership of the dog. Thereafter, a summary judgment motion was filed by Michael's parents seeking dismissal of the claims against them on the basis of their lack of ownership of the dog that had injured Vincent. Summary judgment was denied "for reasons set forth on the record" by order dated April 4, 2005. A transcript of those reasons has not been provided.[4]
Following consideration of a motion by Michael seeking a judgment against NJM for defense and indemnification pursuant to the terms of NJM's coverage, the court entered an order in Michael's favor, finding in a written opinion that Michael was an insured, and that the severability clause of NJM's policy operated to remove him from the purview of the business pursuits exclusion by creating an ambiguity as to the applicability of the exclusion. NJM moved for leave to file an interlocutory appeal, claiming that a final resolution of the coverage issue operated as an impediment to settlement of the action. We granted its motion. We now reverse.

I.
The contested exclusion from liability coverage provided:

Section II  Exclusions
1. Coverage E  Personal Liability and Coverage F  Medical Payments to Others do not apply to bodily injury or property damage:
a. With respect to all insureds, which is expected or intended by one or more insureds even if the bodily injury or property damage:
1. Is of a different kind, quality or degree than expected or intended; or
2. Is sustained by a different person or entity than expected or intended.
However this Exclusion "1.a." does not apply to bodily injury resulting from the use of reasonable force by an insured to protect persons or property.
This Exclusion "1.a." applies to all insureds notwithstanding the provision in Section II  Conditions, Paragraph "2." Severability Of Insurance.
b. Arising out of or in connection with a business engaged in by an insured ...
* * *
Section II  Conditions
* * *
2. Severability of Insurance This insurance applies separately to each insured. *423 This condition will not increase our limit of liability for any one occurrence.
We note that the business pursuits provision excludes coverage for injury arising out of or in connection with a business engaged in by "an" insured, not "the" insured. However, "an" insured is utilized, rather than "any" insured. Moreover, whereas the policy's intentional conduct exclusion specifically provides for the inapplicability of the policy's severability clause to the exclusion, the business pursuits exclusion does not make specific reference to the severability clause, nor do the following eight exclusions. Whether either NJM's failure to use "any" rather than "an" or its failure to specifically reference the severability clause in connection with the business pursuits exclusion results in a finding of coverage are the specific issues presented in this appeal.

II.
We address first the issue of whether there is coverage as the result of NJM's use of the phrase "an" insured. It is doubtlessly true that if NJM had used the phrase "the" insured, coverage for Michael Brady would exist, regardless of the business pursuits exclusion, because there is no evidence that the injury arose out of a business engaged in by him. Care of the infant Vincent was provided by Linda Brady, and no other insured.[5]
We find that the insurer's use of the phrase "an" insured can be reasonably understood only as encompassing a business engaged in either by Linda, her husband Joseph or her son Michael, the three persons to whom homeowner's protection was, in general terms, offered under the policy at issue. Courts have uniformly held that the use of the article "an" in this context is not susceptible to any other meaning, and in this context cannot be deemed synonymous with "the."[6]
*424 In reaching this conclusion, we are mindful that our task in construing a contract of insurance "is to search broadly for the probable intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the policy." Sinopoli v. No. River Ins. Co., 244 N.J.Super. 245, 250, 581 A.2d 1368 (App.Div.1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991). Where the policy is clear and unambiguous, we are bound to enforce it. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990); Boswell v. Travelers Indem. Co., 38 N.J.Super. 599, 604, 120 A.2d 250 (App. Div.1956). Only where the language is ambiguous does the doctrine of reasonable expectations come into play, permitting a construction that favors such expectations of an insured. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961). This principle has particular force when the meaning of an exclusionary clause is at issue, and when an ambiguity arises in this context, the clause must be strictly construed against the insurer so that reasonably anticipated coverage is provided. Weedo v. Stone-E-Brick, Inc., 155 N.J.Super. 474, 485, 382 A.2d 1152 (App.Div.1977), rev'd on other grounds, 81 N.J. 233, 405 A.2d 788 (1979); see also Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576, 267 A.2d 527 (1970); Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 8, 170 A.2d 800 (1961).
However, in this case, no ambiguity is created by the use of the phrase "an insured," and we therefore construe it, as it was doubtlessly intended, to exclude from coverage any liability resulting from the business pursuits of a covered person, regardless of whether the person sued was engaged in those business pursuits. Although stated in dictum, the Supreme Court appears to share our view of the distinction between "the" and "an" insured. See Maryland Cas. Co. v. N.J. Mfrs. Cas. Ins. Co., 28 N.J. 17, 19, 145 A.2d 15 (1958) (noting in construing an exclusion for bodily injury of any employee of the insured while engaged in the employment of the insured that defendant would construe the phrase "the insured" to mean "any insured," which would defeat the purpose of the provision to exclude workers' compensation risks); see also Erdo v. Torcon Constr. Co., 275 N.J.Super. 117, 120-23, 645 A.2d 806 (App.Div.1994).[7]
Further, we do not find that the policy's exclusion is rendered ambiguous by the use of the phrase "an" insured, rather than the phrase "any" insured, finding the two words to operate synonymously. Our view is shared, for instance, by the New Hampshire Supreme Court, which held in Allstate Ins. Co. v. Stamp, 134 N.H. 59, 588 A.2d 363, 365 (1991): "We find that Allstate's use of the indefinite article `an,' rather than the definite `the,' before `insured' is a clear reference to any insured who commits an intentional act resulting in *425 damages, regardless of whether or not he is the particular insured seeking coverage."[8]
That the use of the word "any" could be perceived by some as making the exclusion clearer, does not make the language that was chosen ambiguous. Language in a policy of insurance is genuinely ambiguous only if the "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo, supra, 81 N.J. at 247, 405 A.2d 788.

III.
We address second the issue of whether the policy's severability clause or the absence of a disclaimer of the applicability of that clause rendered the Bradys' homeowner's coverage ambiguous. Although the issue has not been addressed in New Jersey, the courts in other jurisdictions are split on the effect of a severability clause on a policy exclusion that applies to the acts of "an" or "any" insured.
The majority of courts hold, primarily in connection with a construction of the exclusion of coverage for intentional conduct found in many homeowner's policies, that the existence of a severability clause does not affect a clearly worded exclusion such as that existing in the present case.[9]
In particular, we note the court's decision in American Family Mut. Ins. Co. v. *426 Moore, 912 S.W.2d 531, 534-35 (Mo.App. 1995), which construes facts and policy provisions[10] that are substantially similar to those present in the case before us to bar coverage to the son of the operator of a home day care business for injuries sustained by a child receiving day care from a bite by the son's dog. As stated there:
Because an insurance contract is an agreement between parties that should be interpreted in a manner consistent with the expressions therein, the policy before us unambiguously expresses an intention to deny coverage to all insureds when damage is the result of a business pursuit. The purpose of the severability clause is not to negate the plainly worded meaning of the business exclusion clause.

Id. at 534-35.
However, a minority of courts hold to the contrary.[11]
In our view, the former line of cases giving effect to policy exclusionary language as clear and unambiguous is more persuasive. We reach this conclusion for the following reasons: First, if a severability clause is given effect, despite an exclusion of coverage for specifically described conduct by "an insured," as in Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 496 N.E.2d 158 (1986), a leading case adopting the minority position, then the language of the exclusion as it relates to "an insured" or "any insured" is robbed of any meaning. See Chacon v. Am. Family Mut. Ins. Co., 788 P.2d 748, 752 (Colo. 1990) (finding decisions denying coverage despite existence of severability clause more persuasive because each decision "considers and gives effect to all the policy provisions and recognizes that an insurance policy is a contract between the parties which should be enforced in a manner consistent with the intentions expressed therein"); Johnson v. Allstate Ins. Co., 687 A.2d 642, 645 (Me.1997) (declining to follow Worcester because the Court in that decision admittedly construed the policy at issue so as to make the word "any" meaningless).
Second, we disagree with the Worcester Court that a severability clause is rendered meaningless if it does not act to provide coverage to insureds that would otherwise be precluded by exclusions applicable because of the conduct of "an" or "any" insured. We find that the Court in Worcester has misconstrued the purpose of a severability clause, which is designed solely to render the coverage actually provided *427 by the insuring provisions of the policy applicable to all insureds equally, up to coverage limits. The severability clause is not denominated a "coverage provision," and it would be unreasonable to find that it operated independently in that capacity to increase the insurance afforded under the insuring provisions of the policy, or to partially nullify existing coverage exclusions. "[T]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the ... insureds. The purpose is not to negate bargained-for exclusions which are plainly worded." Northwest G.F. Mut. Ins. Co. v. Norgard, 518 N.W.2d 179, 183 (N.D.1994)(quoting Nat'l Ins. Underwriters v. Lexington Flying Club, Inc. 603 S.W.2d 490, 492 (Ky.Ct.App.1979)); American Family v. Moore, supra, 912 S.W.2d at 534-35.
Third, we find it appropriate in determining the scope of the business pursuits exclusion contained in NJM's homeowner's policy and the existence of any genuine ambiguity as the result of the presence of a severability clause to look at how the policy interacts with other available forms of insurance. Carbone v. Gen Accid. Ins. Co., 937 F.Supp. 413, 420 (E.D.Pa.1996). Business risk insurance clearly was available to Linda Brady upon the commencement of her day care business, albeit at a premium in addition to that paid for homeowner's insurance. The decision in Northwest v. Norgard, supra, demonstrates this point when it recites that Jean Norgard, who operated a home day care business, obtained coverage for Jean's day care, at an additional premium, pursuant to the terms of a Home Day Care Coverage Endorsement to her homeowner's policy. 518 N.W.2d at 180. Such coverage was not obtained by Linda Brady. Rather, she had a policy that excluded business risks from its purview.
When viewed in that light, we find it illogical to conclude that an insured would reasonably anticipate coverage for business pursuits pursuant to the terms of a homeowner's policy excluding coverage for such activities, simply because the danger was created by a family member other than the business person. Coverage for a business risk cannot reasonably be found to arise in the absence of the extra premium payment undoubtedly required for such an enhanced risk. See Am. Family v. Moore, supra, 912 S.W.2d at 533-35 ("Because an insurance contract is an agreement between parties that should be interpreted in a manner consistent with the expressions therein, the policy before us unambiguously expresses an intention to deny coverage to all insureds when damage is the result of a business pursuit. The purpose of the severability clause is not to negate the plainly worded meaning of the business exclusion clause.").
Moreover, those business pursuits conducted in the home such as day care are foreseeably subject to risks created by family members other than the business proprietor, such as the risk of injury from a pet owned by another family member, as here. In this circumstance, it would be unreasonable to utilize a purported policy ambiguity as a means of establishing coverage, since no coverage could reasonably have been anticipated to exist in the first instance. To employ the doctrine of ambiguity to create coverage here would thus be contrary to the reasonable expectations doctrine, and would stand that doctrine on its head. Alleged ambiguities cannot be construed in favor of an insured if the only result is to create unexpected coverage.
As a final matter, we note that a preponderance of the cases finding coverage as the result of severability clauses arise from claims by innocent parties or ones against whom claims are tangential. See Northwestern *428 Nat'l Ins. Co. v. Nemetz, 135 Wis.2d 245, 400 N.W.2d 33 (App.1986) providing coverage to an innocent co-owner of property destroyed by a co-insured arsonist, Premier Ins. Co. v. Adams, 632 So.2d 1054 (Fla.App. 5th Dist.1994), Catholic Diocese v. Raymer, 251 Kan. 689, 840 P.2d 456 (1992), Worcester v. Marnell, supra, affording coverage to an innocent parent, and Litz v. State Farm Fire & Cas. Co., 346 Md. 217, 695 A.2d 566 (1997), affording a defense to an innocent spouse.[12] Unlike the insureds in those cases, Michael Brady is not an innocent co-insured who will be unfairly burdened by liability in this case. If he is found to be the owner of the dog, as discovery suggests, he is subject to strict liability as the consequence of the dog's aggressive conduct pursuant to N.J.S.A. 4:19-16. Further, were it not for his mother's business pursuits, Vincent Argent would not have been on the Bradys' property and thus subject to the dog's attack.
In sum, we see no principled reason to afford coverage in light of the business pursuits exclusion contained in NJM's policy, determining that the existence of a severability clause does not operate to create an ambiguity that would require a construction of the policy so as to negate the business pursuits exclusion and afford coverage to Michael Brady.
As a final matter, we address whether the absence of a direct reference to the inapplicability of the severability clause within the business pursuits exception renders that exception ambiguous. We infer that the specific disclaimer of severability, appearing in connection with the intentional conduct exception, was placed there because of the extensive amount of litigation regarding the interpretation of that and similar provisions and the existence of a legal issue whether an exclusion based upon an enhanced degree of culpability should be applied to those whose conduct rises to no more than negligence. In this context, insurers and policyholders alike could benefit from the additional clarification. Differing degrees of culpability are infrequently encountered in the context of the business pursuits exception, and the clarification is thus not essential. Although it might have been preferable if the disclaimer of severability had followed all of the exclusions, we do not find its absence to create an ambiguity that we have found is otherwise lacking in the policy's terms.
Reversed.
NOTES
[1] The record contains no evidence of a third-party complaint by Michael Brady. However, he has filed a "crossclaim" against third-party defendant New Jersey Manufacturers Insurance Company that the parties appear to have deemed to constitute a third-party complaint. We will do likewise, while recognizing the procedural irregularity of what has occurred.
[2] The record does not disclose a complaint against Melissa Brady, her relationship to the other Brady defendants, or whether she has asserted claims against third-party defendant.
[3] The record does not reflect a resolution of that dispute. Nonetheless the parties have presented their positions on coverage to us as though the issue of whether a business was being conducted on the Bradys' premises had been decided adversely to Linda Brady. We will assume such to be the case in our coverage analysis.
[4] Ownership of the dog remains a contested issue. Although we were informed at oral argument that Michael had paid for the dog, which was jointly owned by him and his girlfriend. If the dog is not Michael's, there is no basis for liability or consequent indemnification, regardless of our determination of the legal principles governing the coverage issue.
[5] See, e.g., Western Cas. & Sur. Co. v. Aponaug Mfg. Co., 197 F.2d 673, 674 (5th Cir.1952) (use of "the" insured does not affect coverage of other insureds); Carbone v. Gen. Accid. Ins. Co., 937 F.Supp. 413, 418 (E.D.Pa.1996) (citing cases in which use of a severability doctrine or application of severability clause provided independent coverage when exclusion applied to "the insured."); Armstrong v. Sec. Ins. Group, 292 Ala. 27, 288 So.2d 134, 136-37 (1973) (exclusionary clause utilizing the term "the" insured is without effect as to other persons insured); Arenson v. Nat'l Auto. and Cas. Ins. Co., 45 Cal.2d 81, 286 P.2d 816, 818 (1955) (use of "the" insured in exclusionary clause does not preclude recovery by other insureds); Hildebrand v. Holyoke Mut. Fire Ins. Co., 386 A.2d 329, 331 (Me.1978) (when the term "the" insured is utilized, each insured is considered separately to determine whether conditions of coverage have been met); Unigard Mut. Ins. Co. v. Argonaut Ins. Co., 20 Wash.App. 261, 579 P.2d 1015, 1019 (1978) (coverage and exclusion defined in terms of "the" insured create separate obligations to several insureds).
[6] See, e.g., Allstate Ins. Co. v. Roelfs, 698 F.Supp. 815, 822 (D.Alaska 1987) (intentional acts exclusion applicable to "an" insured precludes coverage for negligence of a co-insured); Allstate Ins. Co. v. McCranie, 716 F.Supp. 1440, 1448 (S.D.Fla.1989) ("The use of `an insured' in the [intentional] exclusion language as opposed to `the insured' results in denial of coverage for a negligent insured if another insured committed an intentional act."), aff'd without opinion sub nom., Allstate Ins. Co. v. Manning, 904 F.2d 713 (11th Cir. 1990); State Farm Fire & Cas. Co. v. Davis, 612 So.2d 458, 466 (Ala.1993) (use of term "an insured" excludes coverage to wife for harm directly attributable to intentional conduct of husband); Travelers Ins. Co. v. Blanchard, 431 So.2d 913, 915 (La.App. 2d Cir.1983) (use of "an" insured excludes coverage for all insureds); Pawtucket Mut. Ins. Co. v. Lebrecht, 104 N.H. 465, 190 A.2d 420, 422-23, (1963) (use of "the" and "an" insured in same policy indicates an intent to cover different situations; "the" insured refers to definite, specific insured who is seeking coverage); Allstate Ins. Co. v. Mugavero, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365, 371-72 (1992) (because injuries were intentionally caused by one designated as "an" insured person, coverage of another family member is excluded); Farmers Ins. Co. of Wash. v. Hembree, 54 Wash.App. 195, 773 P.2d 105, 108 ("Here, the exclusion is not restricted to the intentional act of the particular insured sought to be held liable, but broadly excludes coverage for all intentionally caused injury or damage by an insured, which includes anyone insured under the policy."), rev. denied, 113 Wash.2d 1011, 779 P.2d 729 (1989).
[7] Principles of severability were also utilized to afford coverage when exclusions pertained to "the insured" in Property Cas. Co. of MCA v. Conway, 284 N.J.Super. 622, 666 A.2d 182 (App.Div.1995), aff'd, 147 N.J. 322, 687 A.2d 729 (1997); see also Howell v. Ohio Cas. Ins. Co., 130 N.J.Super. 350, 327 A.2d 240 (App. Div.1974) (named insured designated as husband and/or wife).
[8] See also, e.g., Allstate Ins. Co. v. Gilbert, 852 F.2d 449, 454 (9th Cir.1988) ("We hold that by excluding insurance coverage for injury or damage intentionally caused by "an insured person," Allstate unambiguously excluded coverage for damages caused by the intentional wrongful act of any insured under the policies."); Allstate Ins. Co. v. Foster, 693 F.Supp. 886, 889 (D.Nev.1988) ("`A' or `an' is an indefinite article often used in the sense of `any' and applied to more than one individual object; whereas `the' is an article which particularizes the subject spoken of."); Allstate Ins. Co. v. Freeman, 432 Mich. 656, 443 N.W.2d 734, 754 (1989) ("Strong public policy supports this decision. Adherence to a correct usage of the English language in insurance contract construction promotes a uniform, reliable, and reasonable foundation upon which policyholders and insurers alike may rely when they enter into a contractual agreement. In the instant case, if we place the word `a' or `an' in front of the word `insured' then we must conclude that `an insured' unambiguously means `any insured.'"). But see E.F. by Grunewald v. Joshua M.C., 178 Wis.2d 719, 505 N.W.2d 418, 421 (App.1993) (finding "an" refers to one and "any" refers to more than one).
[9] See, e.g., Allstate Ins. Co. v. Kim, 121 F.Supp.2d 1301, 1308 (D.Haw.2000) (intentional act exclusion applicable to parents sued for negligence following son's intentional conduct); Carbone v. Gen. Accid., supra, 937 F.Supp. at 422 (N.J.law) (CGL exclusion for bodily injury arising out of the use of an automobile operated by any insured applicable to employer of tortfeasing employee); Chacon v. Am. Family Mut. Ins. Co., 788 P.2d 748, 752 (Colo.1990) (intentional act exclusion applicable to parents of intentional tortfeasor); State Farm Fire & Cas. Co. v. Guccione, 171 Ill.App.3d 404, 121 Ill.Dec. 537, 525 N.E.2d 595, 596-97 (Dist.1988) (homeowner's policy's exclusion of claims for bodily injury to any insured party applicable upon negligent discharge of gun), app. denied, 123 Ill.2d 567, 128 Ill.Dec. 900, 535 N.E.2d 411 (1988); Oaks v. Dupuy, 653 So.2d 165, 168 (La.Ct.App.1995) (applying exclusion for use of automobile by "any insured"); Johnson v. Allstate Ins. Co., 687 A.2d 642, 645 (Me.1997) (applying intentional conduct exclusion to wife of sex abusing grandfather); Gorzen v. The Westfield Ins. Co., 207 Mich.App. 575, 526 N.W.2d 43, 44 (1994) (applying homeowner's exclusion for liability arising from the use of an automobile owned or operated by "an insured"); Northwest G.F. Mut. Ins. Co. v. Norgard, 518 N.W.2d 179, 183-84 (N.D.1994) (applying exclusion in day care endorsement to homeowner's policy for sexual molestation inflicted by or at the direction of an insured, an insured's employee or any other person); Mutual of Enumclaw Ins. Co. v. Cross, 103 Wash. App. 52, 10 P.3d 440 (2000) (applying intentional conduct exclusion to wife of child-battering spouse); E.F. by Grunewald, supra, 505 N.W.2d at 420-21 (applying intentional act exclusion to parents of sexually molesting son).
[10] The policy's business pursuits exclusion applied to bodily injury or property damage "arising out of business pursuits of any insured... by an insured except: (1) activities which are usual to non-business pursuits."
[11] See e.g., Premier Ins. Co. v. Adams, 632 So.2d 1054, 1057 (Fla.App. 5th Dist.1994) (finding homeowner's coverage for parents despite intentional conduct exclusion applicable to son); Catholic Diocese of Dodge City v. Raymer, 251 Kan. 689, 840 P.2d 456, 462 (1992) (same); Litz v. State Farm Fire & Cas. Co., 346 Md. 217, 695 A.2d 566, 572 (1997) (finding homeowner's coverage for "apparently innocent" husband despite business pursuits exclusion applicable to wife's babysitting business when it did not appear that liability arose from business pursuits); Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240, 496 N.E.2d 158, 161 (1986) (declining to enforce motor vehicle exclusion of homeowner's policy against parents of intoxicated son causing fatal accident); Illinois Union Ins. Co. v. Shefchuk, 108 Fed. Appx. 294, 302-05 (6th Cir. 2004) (Ohio law) (employing severability clause to find coverage, but noting that clause had additional provision stating: "We will cover each such person or organization just as if a separate policy had been issued to each"); Northwestern Nat'l Ins. Co. v. Nemetz, 135 Wis.2d 245, 400 N.W.2d 33, 38 (App. 1986) (finding coverage for innocent wife despite intentional conduct exclusion applicable to arsonist husband).
[12] Of the minority decisions, Catholic Diocese v. Raymer, supra, can be specifically distinguished by the mode of analysis employed by the Court and Illinois Union v. Shefchuk, supra, can be distinguished on the basis of unique policy language.