# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3522
_____

Great West Casualty Company

*Plaintiff - Appellee*

v.

National Casualty Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck
_____

Submitted: September 10, 2015
Filed: December 7, 2015
_____

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.
_____

LOKEN, Circuit Judge.

This is a liability insurance coverage dispute. In April 2011, independent owner-operator Steven Heinis leased his Volvo semi-tractor and Trailmobile tanker-trailer to Avery Enterprises ("Avery"), a trucking firm providing services to the oil and gas industry in the Bakken oilfields in North Dakota. On June 18, Heinis drove the tractor-trailer rig to Avery's shop in Powers Lake, North Dakota, to repair a crack

in the loading valve or pipe on Heinis's trailer. When Jesse Miller, a shop employee, contacted the pipe with his welding torch, an explosion occurred, injuring Miller, who received workers' compensation benefits from the North Dakota Workforce Safety & Insurance Organization and filed a state court negligence action against Heinis. See N.D. Cent. Code Ch. 65-02, § 65-01-09.

At the time in question, Great West Casualty Company ("Great West") was Heinis's commercial lines liability insurer, and National Casualty Company ("National") was Avery's commercial motor carrier liability insurer. Great West filed this declaratory judgment action seeking a declaration that National is contractually obligated to defend and indemnify Heinis in Miller's pending state court lawsuit and Great West is not. National's Amended Answer asserted contrary positions. The district court[1] granted summary judgment in favor of Great West, concluding that Miller's negligence claim against Heinis was covered under National's policy and excluded under Great West's policy. Great W. Cas. Co. v. Nat'l Cas. Co., 53 F. Supp. 3d 1154, 1190 (D.N.D. 2014). National appeals. Though the parties have argued other issues, to resolve the appeal we need only determine (i) that Heinis was an "insured" under the National policy, (ii) that neither of two exclusions in the National policy applied, and (iii) that the exclusion in Great West's policy applied. Reviewing these issues *de novo*, we affirm.

## I. Background

The April 2011 Lease Agreement provided that Avery would dispatch Heinis to haul fresh water to drilling sites and contaminated "flowback" water from drilling sites to disposal facilities. Avery dispatched and paid Heinis on a per-job basis. The lease required Heinis to remain in "constant contact" with Avery and to respond to

---

[1]The Honorable Charles S. Miller, Jr., United States Magistrate Judge for the District of North Dakota.

dispatches within a reasonable amount of time.  Heinis hauled only for Avery from the commencement of the lease until the June 2011 accident.  Heinis agreed to maintain the tractor and trailer in good and safe operational condition, to comply with federal motor carrier safety regulations, and to be responsible for the cost of repairs, maintenance, and fuel.  The lease required Avery to maintain "fleet cargo and liability insurance" for the equipment, and required Heinis to maintain "property and casualty insurance (bobtail) for the leased equipment."[2]  At the time of the accident, Avery's name and DOT motor carrier numbers were affixed to the tractor.

Some days prior to the accident, Heinis noticed a leak from the trailer's valve or pipe during loading and unloading.  After using a bucket to prevent spills while loading and unloading at least one load of contaminated water, Heinis called Kevin Avery the day before the accident and arranged to have the leak repaired at Avery's repair shop.  It is undisputed that the repair was Heinis's responsibility under the Lease Agreement and that Heinis was not required to have the repair done at Avery's shop.  The next day, Heinis testified, he backed the trailer into the shop, unhooked the trailer before Miller undertook the repair, and rehooked the trailer after the explosion to pull it away from the scene.  Kevin Avery testified that the tractor and trailer were hooked together when he ran out of his office after hearing the explosion.

Miller sued Heinis to recover damages for the serious injuries Miller sustained while undertaking, at Avery's shop, repairs that were Heinis's responsibility under the lease. Whether Miller's claims are covered under Avery's policy with National and/or under Heinis's policy with Great West requires us to review *de novo* the district

---

[2]A motor vehicle policy that excludes coverage when the vehicle is operating "in the business of" a lessee is commonly known as "bobtail" insurance.  Federal law requires interstate motor carriers, but not equipment lessors, to maintain minimum levels of liability insurance.  Thus, this term of the lease agreement and the terms of Great West's bobtail policy are issues of state law.  See Hartford Ins. Co. v. Occidental Fire & Cas. Co., 908 F.2d 235, 237 & n.3 (7th Cir. 1990).

court's interpretation of these insurance contracts, as well as its decision to grant summary judgment. See Land O' Lakes, Inc. v. Empl'rs Ins. Co. of Wausau, 728 F.3d 822, 827 (8th Cir. 2013).

## II. Whether National's Policy Provided Coverage to Heinis

National's policy provided coverage to an insured for "'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" National argues there was no coverage because the "Who Is An Insured" provision did not include Heinis, and because two exclusions applied. The parties do not challenge the district court's determination that North Dakota law governs these issues. Great W., 53 F. Supp. 3d at 1159. Under North Dakota law:

> The interpretation of an insurance policy is a question of law, fully reviewable on appeal. Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. NDCC § 9-07-03. Generally, we attempt to ascertain the intent of the parties through the language of the contract itself. NDCC § 9-07-04.

Nw. G.F. Mut. Ins. Co. v. Norgard, 518 N.W.2d 179, 181 (N.D. 1994) (other citations omitted).

**A. Was Heinis a Covered Insured?** Section II.A.1.c. of National's Motor Carrier Coverage Form provided that Who Is An Insured included:

> c. The owner or anyone else from whom you [Avery] hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

-4-

It is undisputed that Heinis's leased tractor was a covered auto "power unit" and that Miller's injuries resulted from an accident during "maintenance or use" of the leased trailer. Great West argued that Heinis was an insured because the trailer was a covered auto under § II.A.1.c. National argued that § II.A.1.c. did not apply because the accident occurred when the tractor and trailer were not "connected" and the trailer was not being used exclusively in Avery's business. The district court concluded that § II.A.1.c. applied because the trailer was being used exclusively in Avery's business at the time of the accident. Great W., 53 F. Supp. 3d at 1162-71. We need not reach that question because we conclude that, even if the trailer was not being used *exclusively* in Avery's business at the time of the accident,[3] it was "connected to another covered 'auto' that is a power unit."

National argues that § II.A.1.c. did not provide coverage because "connected" required that the trailer be physically attached to a covered power unit when the accident occurred, and Heinis testified that he unhooked the tractor and trailer before Miller began the repairs. We agree with the district court that whether the tractor and trailer were physically attached when the explosion occurred was at least a disputed issue of fact. At the summary judgment stage, we must view the facts in favor of the non-moving party, and therefore we assume the trailer was physically unhooked at the

---

[3]The district court relied on the decision in Freed v. Travelers, 300 F.2d 395, 398 (7th Cir. 1962) (explaining that "the procurement of repairs incident to lessor's duty to hold the tractor ready at all times for the services of the lessee is to be regarded as an activity exclusively in the business of the lessee") (quotation omitted). But Freed was premised on an Interstate Commerce Commission order mandating that leases provide for the exclusive possession, use, and control of leased equipment by the lessee. Id. Motor carrier transportation has been significantly deregulated, and the regulation requiring this provision is now subject to exemptions. See 49 C.F.R. § 376.12(c)(1). The Lease Agreement did not contain a provision giving lessee Avery exclusive possession, use, and control of leased equipment. Neither the parties nor the district court addressed the significance of this omission in applying the policy term "exclusively" to the facts of this case.

moment the explosion occurred. See, e.g., Watkins Inc. v. Chilkoot Distrib., Inc., 655 F.3d 802, 803 (8th Cir. 2011). But we conclude this is not a material fact dispute that precludes the grant of summary judgment. See Fed. R. Civ. P. 56(a).

We are unaware of any case, from North Dakota or any jurisdiction, that has interpreted the word "connected" in this context. Thus, we must determine how the Supreme Court of North Dakota would resolve the issue. See, e.g., Hudson Specialty Ins. Co. v. Brash Tygr, LLC, 769 F.3d 586, 591 (8th Cir. 2014). That Court would "look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." Farmers Union Mut. Ins. Co. v. Decker, 704 N.W.2d 857, 860 (N.D. 2005). In conducting this analysis, "a contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." Norgard, 518 N.W.2d at 183, citing N.D. Cent. Code § 9-07-12.

Because National's policy does not define the term "connected," we must give the term its plain, ordinary meaning. Webster's Third New International Dictionary defines "connected" as including objects "joined or linked together," or "having the parts or elements logically related," at 480 (1986). This definition includes objects that are physically attached, but the words "linked" and "logically related" do not require physical attachment. So the term as used in § II.A.1.c. needs to be defined by reference to "the matter to which it relates."

A commercial tractor and trailer need not operate as a single unit. The trailer can be unhitched and hauled by other tractors operating for different owners or lessees under different contracts. When the tractor is a "covered auto," this provision was obviously intended to exclude coverage for accidents arising from use of a companion trailer when the trailer is operated separately from the tractor and the insured's business. But when a scheduled trailer is "connected," that is, functioning as a unit

-6-

with a scheduled tractor, both are covered autos. There clearly are times when a trailer is briefly unhooked from a tractor for a reason that is consistent with the trailer's status as a covered auto. For example, the driver performing a haul for the insured may briefly detach the trailer to save fuel while he drives to a nearby filling station to refuel the tractor. The trailer is physically unhooked, but the tractor and trailer are still an operating unit, and the trailer should be considered "connected" to the tractor for purposes of § II.A.1.c. This interpretation is consistent with the parties' intent to provide coverage to the lessor of a covered auto being used in the lessee's business. Therefore, whether Heinis was covered by reason of § II.A.1.c. does not turn only on whether he unhooked the tractor and trailer to facilitate the trailer's repair. Rather, the Supreme Court of North Dakota would consider the relevant question to be whether the tractor and the trailer were functioning as a paired unit when the accident occurred.

The Lease Agreement obligated Heinis to remain in "constant contact" with Avery's dispatcher and to respond to dispatches within a reasonable time. The record reflects that, every time Heinis transported a load as Avery's lessor, he drove the same tractor pulling the same trailer. After entering into the lease, Heinis did not use the tractor-trailer rig for any purpose other than hauling loads for Avery. In these circumstances, the tractor and trailer were a functional unit consisting of two types of covered autos being used in Avery's business.

The lease required Heinis to maintain the trailer in safe operating condition and to perform all repairs and maintenance in a timely manner. After discovering the leak, Heinis used a bucket to prevent spills while loading and unloading contaminated drilling water for Avery. He then called Kevin Avery and arranged to have the leak fixed at Avery's shop before the tractor and trailer would be dispatched on another job. Thus, in repairing the tractor, Heinis was executing his contractual duties and, as the explosion tragically confirmed, eliminating an unsafe condition before continuing to transport loads under the Lease Agreement. The tractor and trailer

-7-

arrived at Avery's repair shop as a unit and were unhooked only to facilitate repair the lease required. Momentarily unhooking the trailer to make a necessary repair did not render the trailer "not connected" to the tractor. On these undisputed facts, we conclude that Heinis's tractor was "connected" to a covered auto power unit for the purposes of § II.A.1.c. of National's policy. Therefore, Heinis was an "insured" to whom the liability coverage provided by National's policy applied to Miller's claim that Heinis's negligence caused the explosion.

**B. Did a Policy Exclusion Apply?** National argues that, even if its policy provided Heinis coverage for the accident that injured Miller, the "employer's liability" and "fellow employee" exclusions precluded coverage. Section II.B.5. of National's policy, the "Fellow Employee" exclusion, excluded coverage for "[b]odily injury to . . . [a]ny fellow employee of the insured arising out of and in the course of the fellow employee's employment or while performing duties related to the conduct of your business." National argued that Heinis was an employee of Avery, and therefore a fellow employee of Miller, because the definition of employee in the Federal Motor Carrier Safety Regulations ("FMCSRs") should replace any contrary definitions in its policy or in state law.[4] The district court, noting that the Supreme Court of North Dakota has not considered this question, and that other jurisdictions have reached conflicting conclusions, held that the FMCSRs did not apply, and even if they did, Heinis was not an employee under the FMCSRs. Great W., 53 F. Supp. 3d at 1178-88. Applying North Dakota's rule requiring courts to construe ambiguous exclusions strictly against the insurer, the district court found no reason to depart from

---

[4]The FMCSRs define "employee" as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler." 49 C.F.R. § 390.5.

the plain meaning of the definition in National's policy or to assume that the FMCSRs were implicitly incorporated. Great W., 53 F. Supp. 3d at 1187.

Section II.B.4.a. of National's policy, the "Employer's Liability" exclusion, excluded coverage for "[b]odily injury to . . . [a]n employee of the insured arising out of and in the course of (1) Employment by the insured; or (2) Performing the duties related to the conduct of the insured's business." National argued that, if Heinis was an additional "insured," this provision excluded coverage because the bodily injury caused by the covered accident was suffered by Miller, an employee of the named insured. National cited our decision in Farmers Elevator Mutual Insurance Co. v. Carl J. Austad & Sons, Inc., 366 F.2d 555 (8th Cir. 1966), as controlling on this issue of North Dakota law. The district court disagreed because the policy in Farmers lacked a "severability clause,"[5] and the presence of this clause created an ambiguity that must be resolved against National in construing this exclusion.[6] In its only decision considering this issue, the Supreme Court of North Dakota "observed that the jurisdictions that have attempted to reconcile severability clauses and exclusionary clauses have not done so uniformly," and concluded that "the ambiguity here is resolved by applying the rules for interpreting contracts, contained in NDCC Chapter 9-07." Norgard, 518 N.W.2d at 182-83.

We agree with the district court that neither exclusion applied. But unlike the district court, we conclude the Supreme Court of North Dakota would apply the

---

[5]National's policy provided that, "Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or suit is brought."

[6]In so ruling, the court disregarded our decision in Universal Underwriters Insurance Co. v. McMahon Chevrolet-Oldsmobile, Inc., 866 F.2d 1060, 1064 (8th Cir. 1989), where we concluded that, despite the policy's severability clause, the Supreme Court of South Dakota would not "extend[] an insurer's liability to additional insureds above and beyond that afforded to the named insured."

analysis mandated by Norgard equally to both exclusions. National does not (and could not) challenge the district court's conclusion that the interpretation of the exclusions is governed by state law. Applying North Dakota common law to the Lease Agreement, it appears that Heinis was acting as Avery's independent contractor, not its employee, at the time of the accident. See generally Doan ex rel. Doan v. City of Bismarck, 632 N.W.2d 815, 821 (N.D. 2001); Iverson v. Bronco Drilling Co., Inc., 667 F. Supp 2d 1089, 1094 (D.N.D. 2009); see also 49 C.F.R. § 376.12(c)(4) ("[n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee").

The fellow employee and employer's liability exclusions limit the policy coverage to liabilities that are not excluded by the remedy of workers' compensation benefits. Workers' compensation benefits are an injured employee's exclusive remedy against his employer and fellow employees for an injury arising out of and in the course of employment. See, e.g., N.D. Cent. Code §§ 65-01-01, 65-01-08.1; Mitchell v. Sanborn, 536 N.W.2d 678, 683 (N.D. 1995). By statute, an "employee" may recover workers' compensation benefits from an "employer," but not from "an independent contractor under the common-law test," § 65-01-02.17. An injured employee may "proceed at law to recover damages" that a third person is liable to pay, including an independent contractor of the employer. If the employee has received workers' compensation benefits, the North Dakota Workforce Safety & Insurance Organization "is subrogated to the rights of the injured employee" and has a lien that "attaches to all . . . insurance payable by reason of a legal liability of a third person." § 65-01-09.

Miller's lawsuit is premised on these statutory principles -- he received workers' compensation benefits as Avery's employee and sued Heinis for negligence. If Heinis was acting as a common law independent contractor, North Dakota law will apparently permit Miller to recover in the negligence action. If Heinis is denied

-10-

coverage under National's policy by reason of either exclusion -- because the FMCSR definition of employee applies, or because an insurer's liability to additional insureds may not exceed that afforded the named insured -- and if coverage is also excluded under Great West's "bobtail" insurance, then Miller and the Workforce Safety & Insurance Organization will likely find any damages recovered in the negligence action uncollectible. Of course, no North Dakota statute or judicial precedent precludes this result. But we conclude the Supreme Court of North Dakota would find it inconsistent with the policies underlying the workers' compensation statutes and therefore with the parties' intent reflected in the insurance contract. See Blaskowski v. N.D. Workmen's Comp. Bureau, 380 N.W.2d 333, 335 (N.D. 1986) ("The purpose of the Bureau's subrogation rights is to reimburse the fund . . . at the expense of the persons at fault."). In these circumstances, applying Norgard, the Court would rule that these exclusions, read together with the severability clause, do not apply to relieve National of the duty to defend additional-insured Heinis from a negligence action by the named insured's employee.[7] National's duty to indemnify Heinis, if any, must of course await the outcome of Miller's lawsuit.

### III. Whether Great West's Policy Provided Coverage to Heinis

The district court held that Great West's policy excluded coverage for Heinis in Miller's underlying state court lawsuit because the trailer was a covered auto being used "in the business of" Avery, a person "to whom the 'auto' is rented, leased or loaned." Great W., 53 F. Supp. 3d at 1189-90. We agree.

---

[7]In other words, consistent with North Dakota workers' compensation principles, the Court would read the severability clause in National's policy as excluding coverage only when an injured employee brings a negligence claim against his own employer or fellow employee. Here, under North Dakota common law, Heinis was not Miller's fellow employee at Avery, nor was he Miller's employer.

-11-

We have found no North Dakota Supreme Court decision interpreting "in the business of" in this context. In National Continental Insurance Co. v. Empire Fire & Marine Insurance Co., 157 F.3d 610 (8th Cir. 1998), the owner-operator of a tractor under permanent lease to a trucking company was sued by persons injured in an accident that occurred while he was driving the tractor in for scheduled maintenance. The trucking company's insurer sued the operator's "nontrucking" liability insurer to recover settlement damages and litigation costs. Applying Oregon law, we concluded that, in construing the defendant insurer's exclusion for damages while a covered auto is "used in the business of" the lessee, the question was whether the independent contractor "was acting within the scope of *the service contract* with [the lessee] -- in other words, whether he was fulfilling his bargained-for contractual duties at the time of the accident. To the extent that he was executing his contractual duties, he was clearly acting 'in the business of' [the lessee]." Nat'l Cont'l, 157 F.3d at 612, citing Hartford, 908 F.2d at 239.

While not controlling authorities, we agree with the district court that the Supreme Court of North Dakota would adopt the reasoning of National Continental and Hartford and look to the terms of the Lease Agreement between Heinis and Avery to determine whether, at the time of the accident, Heinis was performing his contractual duties and therefore the trailer was being used in Avery's business.[8] The Lease Agreement required Heinis to maintain the trailer in safe operating condition, to perform all repairs and maintenance in a timely manner, and to comply with all federal motor carrier safety regulations. After Heinis finished a haul for Avery in which he used a bucket to prevent spills of contaminated water, Heinis contacted

[8]National argues that South Dakota law governs this issue because Heinis is a South Dakota resident and Great West issued its policy there. This is a dubious choice-of-law contention given the dispute's ties to North Dakota, but in any event we conclude the Supreme Court of South Dakota would apply the same analysis. National has not argued that South Dakota law differs from North Dakota law in any relevant respect.

Kevin Avery and arranged to have the leak repaired before Heinis was again dispatched. In having the tractor repaired, Heinis executed his contractual duties and therefore was acting in Avery's business at the time of the accident.

National argues the district court erred in granting summary judgment on this issue because the phrase "in the business of" is an ambiguity that must be construed against the insurer, Great West. National notes that various courts have interpreted the phrase to apply when the driver is "under dispatch," is acting at the specific direction of the carrier, or is engaged in an "operational routine." However, that a contract term is subject to conflicting interpretations does not make it ambiguous as a matter of law. Moreover, the Supreme Court of South Dakota "would be reluctant to apply the general rule construing ambiguities liberally in favor of the insured and strictly against an insurer in a dispute between insurance companies." St. Paul Fire & Marine Ins. Co. v. Schilling, 520 N.W.2d 884, 889 (S.D. 1994).

Under North Dakota and South Dakota law, the meaning of an insurance policy is determined based on contractual intent and the objectives of the parties as expressed in the contract. Trucking and bobtail insurance policies are intended to ensure there is liability coverage when leased equipment is used for both trucking and non-trucking activities. The focus in National Continental and Hartford on the lessor's bargained-for contractual duties at the time of the accident is consistent with that purpose. We conclude that the Supreme Courts of North Dakota and South Dakota would interpret the Great West bobtail policy to exclude coverage for an accident that occurred while the equipment was being used "in the business of" the trucking company lessee *and* was covered by the lessee's liability insurer. That is the situation presented in this case, We therefore affirm the district court's ruling that Miller's claim against Heinis was not covered by the Great West policy.

The judgment of the district court is affirmed.

_____