**Sarah HOLZKNECHT, Mother and Next Friend of Meghan Holzknecht, Appellant,**

v.

**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.**

No. 2009–CA–001022–MR.

Court of Appeals of Kentucky.

Aug. 13, 2010.

Matthew C. Hess, Elizabethtown, KY, for Appellant.

Beth A. Lochmiller, Jonathan A. Rabinowitz, Elizabethtown, KY, for Appellee.

Before TAYLOR, Chief Judge; COMBS and NICKELL, Judges.

## OPINION

COMBS, Judge:

This case involves a dispute as to coverage under a homeowner's insurance policy. Sarah Holzknecht, as mother and next friend of Meghan Holzknecht, appeals from a summary judgment entered by the Hardin Circuit Court in favor of Kentucky Farm Bureau Mutual Insurance Company (Farm Bureau). The trial court held that the policy was unambiguous in excluding coverage for injury arising out of an insured's "business pursuit." The court concluded that the exclusion applied to bar coverage under the circumstances of this case, a result challenged by Holzknecht on appeal. In the alternative, Holzknecht contends that the exclusion clause is subject to the policy's severability provision. After our review of counsels' arguments and the pertinent law, we affirm.

On January 23, 2008, Sarah Holzknecht filed a complaint against Sherri May, John David May, and Farm Bureau, the Mays' homeowner's insurance carrier. Holzknecht alleged that the Mays were liable for injuries sustained by her daughter at a home-based child care business operated by the Mays. A dog kept at the Mays' day care attacked and mauled Meghan. Holzknecht claimed that the Mays failed to exercise ordinary care for the safety of her

child; additionally, she asserted liability under the provisions of Kentucky Revised Statute(s)(KRS) 258.235(4), which provides that the keeper of a dog shall be responsible for the damage that it causes. Farm Bureau defended the action under a reservation of rights.

After the Mays were deposed, Farm Bureau filed a petition for declaration of rights pursuant to KRS 418.040. Farm Bureau alleged that it was under no obligation to defend or to indemnify the Mays with respect to the underlying tort action because: (1) the homeowners had declared to Farm Bureau that no business enterprise would be undertaken at the home and (2) their policy specifically excluded coverage for personal liability arising out of or in connection with a business pursuit. Farm Bureau next filed a motion for summary judgment.

In its memorandum in support of the motion for summary judgment, Farm Bureau argued that the clear and unambiguous language of the homeowner's policy put the Mays on notice that coverage was excluded with respect to any injuries arising out of or in connection with the home-based day care service. Holzknecht responded to the motion, arguing that the facts and circumstances underlying the tort action against the Mays compelled coverage pursuant to the terms of the policy.

The trial court concluded that the Mays' misrepresentation concerning the operation of a day care business would—in and of itself—disqualify them from coverage. Additionally, the trial court concluded that the policy specifically and unambiguously excluded coverage for personal liability *arising from the business*. Holzknecht argued that the policy should nevertheless provide coverage since a dog mauling is the type of event that might have occurred regardless of a business activity conducted

at the Mays' home. The court disagreed. It also rejected Holzknecht's argument in the alternative that the exclusion clause could and should be severed with respect to John David, entitling him to coverage since he did not operate the day care business. The court entered summary judgment in favor of Farm Bureau. This appeal followed.

On appeal, Holzknecht presents two issues for our review. First, she contends that the trial court erred by concluding that the policy's "business pursuits" exclusion was unambiguous and bars coverage for the tort claim. Next, Holzknecht contends that the trial court erred by failing to conclude that the exclusion clause was severable as to the coverage available to John David May. We shall address these issues in the order in which they were presented by the parties' briefs.

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule[s] of Civil Procedure 56.03. Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Summary judgment "is proper where the movant shows that the adverse party could not prevail under any circumstances." *Id., citing Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985).

On appeal, we must consider whether the trial court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law.

*Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App. 1996). Since summary judgment involves only questions of law and not the resolution of disputed material facts, an appellate court does not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992). Our review is *de novo.*

The interpretation of an insurance policy often presents a pure question of law, rendering it appropriate for summary judgment. *See Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809 (Ky.App.2000). Terms of a policy will be given their plain and ordinary meaning. *City of Louisville v. McDonald*, 819 S.W.2d 319 (Ky.App.1991). Where the terms of the policy are clear and unambiguous, they must be enforced as drafted. *Osborne v. Unigard Indem. Co.*, 719 S.W.2d 737 (Ky.App.1986).

Holzknecht argues first that the trial court erred by granting summary judgment in favor of Farm Bureau based on the business pursuits exclusion of the homeowner's policy. She argues that the exclusion is inapplicable under the facts and circumstances of this case.

The policy language at issue provides as follows:

SECTION II—EXCLUSIONS

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to "bodily injury" or "property damage":

\* \* \* \* \*

b. Arising out of or in connection with a **"business"** engaged in by an **"insured."** This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**;

\* \* \* \* \*

n. Arising out of the home day care business. If an insured regularly provides home day care services to a person or persons other than insured and receives monetary or other compensation for such services, that enterprise is a business pursuit....

Therefore, with respect to a home day care enterprise which is considered to be a business pursuit, this policy:

(1) Does not provide SECTION II—LIABILITY COVERAGES because business pursuits of an insured are excluded under exclusion 1.b. of Section II Coverages—Exclusions;

This home day care business exclusion does not constitute a reduction of coverage.

Homeowner Policy at 24—28. The policy includes the following definitions:

2. **"Business"** includes trade, profession or occupation.

3. **"Insured"** means you and residents of your household who are:

a. Your relatives; or

b. Other persons under the age of 21 and in the care of any person named above. (All emphases original.)

It is undisputed that a home day care business was being operated from the insured premises but that the Mays had informed Farm Bureau that there would be no business pursuits conducted on the premises. Because they had had previous experience with securing a home day care coverage endorsement, the Mays were aware that their homeowner's policy lacked such an endorsement to secure added coverage for their business.

Holzknecht contends that summary judgment was improper because the policy's business pursuits exclusion is either inapplicable under the circumstances or

ambiguous as drafted. She argues that the dog that mauled her child was not directly involved in the day care business and the child's injuries did not arise out of any act, omission, or duty of the Mays related to the day care business. It was, she contends, an occurrence incident to non-business pursuits; *i.e.*, the keeping of the dog was not part of the business but part of the home itself.

Farm Bureau responds that summary judgment was proper because the policy expressly excludes coverage for injuries "arising out of or in connection with" a business—specifically a home-based day care business—engaged in by an insured. The company argues that but for the day care business, the child would not have been on the premises and the tort claim would not have arisen. Additionally, the company relies on the concealment or fraud provisions of the policy to deny coverage. We agree with Farm Bureau. The terms of the policy are unambiguous and specifically exclude the coverage that Holzknecht seeks.

In support of her argument, Holzknecht points out that the Mays' liability for the dog mauling did not "arise from duties or services owed because of the day care business" but from their statutory duty as keepers of a dog. Appellant's brief at 7. It is true that the Mays' liability did arise from their statutory duty as keepers of a dog. However, the policy expressly provides that the business pursuits exclusion *is not limited to* injuries resulting from an act or omission "involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business(.)" Instead, the policy exclusion is much more broadly drafted to encompass injuries "arising out of or in connection

with a business engaged in by an insured." We agree with the trial court's observation as follows:

> It should not be discounted that Holzknecht would not have been on this property and therefore not bitten by the dog were it not for the conduct of the day care business on the property. It is the increased risk associated with conducting such a business, including the presence of a number of children that calls for a specific rider or endorsement to provide appropriate commercial coverage.

Summary Declaratory Judgment at 5. The Mays' liability arose because the child was on the premises (where she undoubtedly had a right to be) when she was mauled, and her presence on the premises was plainly attributable to and connected with the business.

Holzknecht observes that there are no Kentucky cases dealing with a dog bite in the context of a business-pursuits exclusion clause. She contends that the business pursuits exclusion should be held to apply only if the dog was "involved in the business and kept on the premises for the purpose of earning a profit for or protecting the business." Appellant's brief at 8. Holzknecht cites *Wiley* [1] *v. Travelers Ins. Co.*, 534 P.2d 1293 (Okla.1974), and *Ratner v. Canadian Universal Ins. Co.*, 359 Mass. 375, 269 N.E.2d 227 (1971), in support of her position.

The dispute in *Wiley* centered on whether the tortfeasor's dog-breeding operation qualified as a business pursuit or was merely a hobby. The court's resolution of the issue did not depend on the fact that the dog that caused the injury was an integral part of the business but focused

---

1.  The appellee's brief cites this case as *Whiley*. The correct spelling as reported in Pacific 2d is *Wiley*.

on the fact that the policy at issue contained an **exception to the exclusion.** No such exception exists in the policy involved in this appeal.

Although a dog bite gave rise to the claim in *Ratner*, the type of insurance coverage at issue in that case was commercial rather than that of a homeowner. The court found that there was coverage **by way of a business endorsement** because the dog was kept by the tortfeasors on their property for security purposes. Because the dog was on the premises primarily in a business capacity, the dog bite was covered under the business endorsement. The court analogized the injury from the dog bite to a gun wound sustained where a gun was kept on the premises for protection.

*Wiley* and *Ratner* involve circumstances wholly distinguishable from the case before us and offer no guidance in our review of the court's judgment in this case. There is no dispute that the Mays' home was the site of an established and profitable day care business and that the exclusion clause contained in their policy *broadly* excluded coverage for injuries "arising out of or in connection with a business engaged in by an insured." The dog was on premises where a business was being conducted, and the dog bite clearly fell under the expansive language of the exclusion clause, withholding coverage for operation of a business.

Holzknecht also relies on this court's decision in *Foster v. Allstate Ins. Co.*, 637 S.W.2d 655 (Ky.App.1982), in support of her argument that summary judgment in favor of Farm Bureau was improper. In *Foster*, this Court examined a business-pursuits exclusion clause in a homeowner's

insurance policy. The policy provided that the liability protection afforded by Section II of the policy did not apply:

> (d) to bodily injury or property damage arising out of business pursuits of any Insured *except activities therein which are ordinarily incident to non-business pursuits . . . .*

*Id.* at 656. (Emphasis added). For purposes of its opinion, the Court assumed that the homeowner's baby-sitting enterprise was a business pursuit and focused exclusively on the exception to the exclusion. The Court examined the decisions of other jurisdictions and concluded that the exception provision contained in the exclusion "leaves some doubt as to its meaning, and it is clearly susceptible to two reasonable interpretations . . . ." *Id.* at 657. Because of the ambiguity in the exception, the Court applied the rule *contra proferentem*, properly interpreting the contract more strictly against its drafter, and construed the exclusion as not precluding coverage. *Id.* Again, there is no similar exception to the exclusion clause in the Mays' policy. Nor is there any ambiguity in the exclusion clause itself. Consequently, the literal language of the exclusion must apply to preclude coverage in this case.

As an alternative to her argument that the business pursuits. exclusion does not apply in this case, Holzknecht contends that the clause is subject to the policy's severability provision. She argues that the policy should be construed so as to apply coverage *to each insured separately* and to preserve coverage for John David May since he was not engaged in the day care business.[2] In support of her argument, Holzknecht relies on our decision in

2. The policy provides as follows:
SECTION I—CONDITIONS
2. Severability of Insurance. This insurance applies separately to each "insured."

This condition will not increase our limit of liability for any one "occurrence."

*K.M.R. v. Foremost Ins. Group*, 171 S.W.3d 751 (Ky.App.2005). However, that case does not support her argument.

In *Foremost*, this Court examined the provision of a homeowner's policy excluding coverage to its insureds for bodily injury caused by intentional acts. The underlying tort action concerned Tommy Conrad's sexual molestation of K.M.R. The trial court concluded that the intentional nature of Tommy's acts absolved Foremost of any duty to defend or to indemnify Tommy or his wife, Elizabeth. K.M.R. appealed, contending that the allegations in her complaint against Elizabeth focused on Elizabeth's "unintentional, negligent omissions to protect the child." K.M.R. argued that the severability clause rendered the policy ambiguous as to coverage for Elizabeth.

After carefully examining the language of the exclusion clause contained in the Foremost policy, we rejected K.M.R.'s argument. We held that Foremost's policy which excluded coverage for bodily injuries "[r]esulting from any act or omission that is intended by **any** of you to cause any harm or that **any** of you could reasonably expect to cause harm" was carefully and precisely drawn *to exclude coverage for both* of the Conrads. We observed that a clearly worded exclusion is not treated as ambiguous or rendered unclear by the mere existence of a severability provision. *Foremost, supra, citing National Ins. Underwriters v. Lexington Flying Club, Inc.*, 603 S.W.2d 490 (Ky.App.1980). We held that the policy's severability clause did not preserve coverage for Elizabeth since the policy plainly "denies protection to an innocent actor who is tainted by association with an intentional wrongdoer." *Id.* at 754.

Holzknecht contends that Farm Bureau "has offered no exclusion that would apply to defeat coverage other than Sherri May's

operation of a day care business." Appellant's brief at 14. Farm Bureau's policy excludes coverage where "*an* insured" is engaged in a business pursuit as opposed to "*any* insured." Accordingly, based on that distinction between the article "an" *versus* the adjective "any," Holzknecht argues that John David May's coverage should be preserved.

In its response, Farm Bureau rejects Holzknecht's characterization of John David May as an "innocent actor," paraphrasing the language of our holding in *Foremost, supra.* Farm Bureau points to statements included in the Mays' depositions that indicate that John David was actively involved as a keeper of the dog and that he was also involved (albeit arguably minimally) in the day care business. Additionally, Farm Bureau observes that John David May was aware that the business was being conducted in his home and that he consented to its continued operation. Presumably, he benefitted financially from the enterprise as well. Farm Bureau cites *Argent v. Brady*, 386 N.J.Super. 343, 901 A.2d 419 (2006), in support of its contention that John David May is also excluded from the policy's coverage under these circumstances.

In *Argent, supra,* the Court considered whether the business pursuits exclusion of a homeowner's insurance policy applied to the resident son of the named insureds. Linda Brady, a named insured, operated a day care business from her home. Linda's son, Michael, kept a dog on the premises. When an infant in Linda's care was bitten in the face by Michael's dog, the victim's mother filed a tort action against Linda Brady, her husband, and Michael Brady. There was no evidence that the injury arose out of a business engaged in by Michael. Nonetheless, the Bradys' insurer denied coverage based on the policy's business pursuits exclusion. In granting sum-

mary judgment in favor of the victim, the trial court concluded that Michael was an insured, reasoning that the severability clause of the homeowner's insurance policy operated to remove him from the applicability of the exclusion clause—noting as well an ambiguity as to the applicability of the exclusion.

On appeal, the court reversed. The appellate court rejected the Bradys' contention that the insurer's use of "any insured" rather than "an insured" created an ambiguity that triggered the severability clause. "That the use of the word 'any' could be perceived by some as making the exclusion clearer does not make the language that was chosen ambiguous." *Argent v. Brady*, 901 A.2d at 425. The court concluded that the severability clause did not affect the clearly worded exclusion clause. It reasoned as follows:

> [T]he severability clause is not denominated a "coverage provision," and it would be unreasonable to find that it operated independently in that capacity to increase the insurance afforded under the insuring provisions of the policy, or to partially nullify existing coverage exclusions.

*Id.* at 427.

Finally, the Court noted that the availability of a business-risk insurance endorsement was an option specifically intended to provide coverage under the very kind of circumstances of the case before us. The Court reasoned as follows:

> [T]hose business pursuits conducted in the home such as day care are *foreseeably subject to risks created by family members other than the business proprietor*, such as the risk of injury from a pet owned by another family member, as here. In this circumstance, it would be unreasonable to utilize a purported policy ambiguity as a means of establishing coverage, since no coverage could rea-

sonably have been anticipated to exist in the first instance. To employ the doctrine of ambiguity to create coverage here would thus be contrary to the reasonable expectations doctrine, and would stand that doctrine on its head. Alleged ambiguities cannot be construed in favor of an insured if the only result is to create unexpected coverage. (Emphasis added.)

*Id.* In summary, rather than attempting to infer ambiguity from a severability provision, an insured's proper resolution of such a risk would be to opt for a business-risk endorsement.

We agree with the reasoning of the New Jersey appellate court in all respects, and we find it particularly applicable in this case. John David May plainly falls within the scope of the policy's business-pursuits exclusion because it appears that he was involved in the enterprise. We agree that the policy exclusion is unambiguous and broad enough to encompass him. Since severability clauses are not drafted to negate policy exclusions, the existence of that clause in Farm Bureau's policy does not render the exclusion ambiguous. We conclude that the availability of a business-risk endorsement was the only clear and unambiguous protection to the Mays. Tortured constructions of clauses in an attempt to create an aura of ambiguity are unavailing to create coverage.

We affirm the judgment of the Hardin Circuit Court.

ALL CONCUR.