<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>
File Name: 19a0236n.06

Case No. 18-6152

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 03, 2019
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CONTINENTAL REFINING CO., LLC, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| HARTFORD STEAM BOILER | ) |
| INSPECTION & INSURANCE CO., | ) |
| | ) |
| Defendant-Appellee. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

---

BEFORE: SILER, GIBBONS, and LARSEN, Circuit Judges.

SILER, Circuit Judge.  Continental Refining Company, LLC ("Continental") appeals the grant of summary judgment dismissing Continental's claims against its insurer, The Hartford Steam Boiler Insurance and Inspection Company ("HSB").  Following an accident at Continental's refinery, HSB denied most of the claimed damages under Continental's equipment breakdown policy.  The district court granted summary judgment to HSB, finding that an admission made by Continental during discovery foreclosed its claims under its HSB policy.  We AFFIRM.

I.

Continental owns a crude oil refinery that HSB insured through an equipment breakdown insurance policy (the "Policy").  The Policy included coverage for "physical damage to 'covered property'" that is "the direct result of an 'accident[,]'" which is defined as a "fortuitous event that

causes direct physical damage to 'covered equipment.'"[1]  The only type of explosion covered by the Policy was non-combustion explosions in a steam vessel, specifically, an "[e]xplosion, other than [a] combustion explosion, of steam boilers, steam piping, steam engines or steam turbines."  The Policy also contained specific exclusions for "loss, damage or expense caused directly or indirectly by . . . [f]ire, [or] [c]ombustion explosion.  This includes, but is not limited to, a combustion explosion of any steam boiler or other fired vessel."  The exclusion also extended to "[a]ny other explosion, except as specifically provided" in the clause discussing covered non-combustion explosions.

As described in Continental's expert report, which HSB accepted as true for purposes of its motion,[2] the incident occurred in 2015 in the F-2001 Charge Heater at the refinery.  The F-2001 Charge Heater is a natural-gas fired, radiant/convective atmospheric tube furnace that heats a naphtha/hydrogen petroleum stream for subsequent treatment in the plant's R-2001 Hydrotreater Reactor.  The heater prepared a naphtha stream for additional refining by sending the high-volume and high-pressure stream through a snaking series of pipes within a box-shaped furnace.  The heater had been inspected in 2012 and found to be in acceptable working condition, and the condition of the cast refractory walls was "in good-to-excellent condition, with no apparent cracking or damage."

On October 11, 2015, a section of piping located on the west wall of the unit burst open, creating an opening of approximately 12 square inches.  The incident, described by Continental's expert as a Boiling Liquid Expanding Vapor Explosion ("BLEVE")-type mechanical explosion,

---

[1] HSB's coverage position letters acknowledged that Continental had sustained "Damage to Covered Property," pursuant to the terms of the Policy.

[2] Likewise, for Rule 56 purposes, HSB did not contest that an "accident" occurred, nor the "covered equipment" element, and agreed that a BLEVE-type explosion occurred.

caused considerable damage to the interior of the unit, most notably to the refractory walls. The line also continued to discharge the flammable naphtha/hydrogen mixture into the heater, and substantial fire ensued. The fire caused significant damage to a nearby electrical cable tray, which ultimately disabled the entire plant. Continental sought recovery under the Policy; HSB sent payment for damages that it determined were caused by the ruptured pipe but did not pay for damages due to the explosion or fire. Continental then brought suit.

During discovery, Continental specifically admitted that the charge heater is not a steam boiler, steam piping, steam engine or steam turbine, meaning that the fire and explosion exclusion in the Policy applied to the incident here, regardless of whether it was a fire, explosion, or BLEVE immediately followed by a fire. The district court, in granting HSB's motion for summary judgment, held that this "lone discovery admission ensures exclusion and disposes of the case."

## II.

We review a district court's grant of summary judgment de novo, "construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016).

## III.

Continental contends that the district court improperly granted summary judgment "because HSB failed to demonstrate that there is no coverage under the [P]olicy for Continental's entire loss." Continental argues that, "[a]t the very least, there is a genuine issue of material fact as to whether the loss is covered, precluding a grant of summary judgment."

Continental's position relating to a genuine issue of material fact is unavailing. In its summary judgment motion below, HSB accepted as true for the purpose of its motion "the factual allegations and the opinions expressed in [Continental's Expert] Report." Continental's argument

is erroneous as HSB had, by its own language, aligned its motion with the summary judgment standard and accepted as true the evidence in Continental's favor as the nonmoving party.

Likewise, Continental's position regarding the Policy's coverage is unpersuasive. The parties agree that Kentucky law applies in this diversity case. Our analysis "begins with the text of the policy itself." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 430 (Ky. Ct. App. 2013). The Kentucky Supreme Court has "consistently held that the words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Thiele v. Ky. Growers Ins. Co.*, 522 S.W.3d 198, 200 (Ky. 2017) (cleaned up). "[W]hen interpreting insurance policies, the contract should be liberally construed and any doubts as to coverage should be resolved in favor of the insured." *MGA Ins. Co., Inc. v. Glass*, 131 S.W.3d 775, 778 (Ky. Ct. App. 2004) (cleaned up). "The rule of strict construction against an insurance company," thus, "does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994). Important to this case, "a clearly worded exclusion is not treated as ambiguous," and "[t]ortured constructions of clauses in an attempt to create an aura of ambiguity are unavailing to create coverage." *Holzknecht v. Ky. Farm Bureau Mut. Ins. Co.*, 320 S.W.3d 115, 121–22 (Ky. Ct. App. 2010); *see also Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372–73 (6th Cir. 1995).

Here, as noted by the district court and illustrated in the factual background, "[t]hrough an interlocking combination of provisions, the only 'explosions' the HSB policy does not exclude are non-combustion explosions of 'steam boilers, steam piping, steam engines or steam turbines.'" The relationship between the relevant Policy clauses is clear and unambiguous, and the Policy

must therefore be enforced as written. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002).

Continental's own expert attributed the loss to a BLEVE-type mechanical explosion. The Policy expressly excludes all explosions, except for non-combustion explosions of "steam boilers, steam piping, steam engines or steam turbines." The Policy's language emphasizes that HSB "will not pay for loss . . . caused directly or indirectly by [excluded events], whether or not caused by or resulting from an 'accident.'" Continental's own admission that the charge heater was not any form of steam vessel[3] was thus properly found by the district court to be dispositive, as the claimed BLEVE-type mechanical explosion does not fall within the Policy's coverage clause, and is excluded by the Policy's exclusions.

AFFIRMED.

---

[3] Continental appears to argue on appeal that the exclusion does not apply because HSB did not offer expert proof as to whether the charge heater is a "steam vessel" and "steam vessel" is not a defined term in the Policy. But such expert proof is not necessary in light of Continental's admission that the charge heater was not a "steam boiler, steam piping, steam engine or steam turbine," all of the examples of "steam vessels" enumerated in the Policy's coverage statement.