RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2020-SC-0061-DG

JULIE G. THOMAS, INDIVIDUALLY AND        APPELLANTS
AS NEXT FRIEND FOR S.T., A MINOR;
DONALD F. THOMAS, INDIVIDUALLY AND
AS NEXT FRIEND FOR S.T., A MINOR;
ELIZABETH RENNER, AS NEXT FRIEND
AND PARENT OF C.R., A MINOR AND
JEFFERY RENNER AS NEXT FRIEND AND
PARENT OF C.R., A MINOR

               ON REVIEW FROM COURT OF APPEALS
V.               NOS. 2017-CA-1875 & 2014-CA-1876
       MADISON CIRCUIT COURT NOS. 16-CI-0133 & 16-CI-0169

STATE FARM FIRE AND CASUALTY        APPELLEES
COMPANY; BESSIE PERKINS AND JERRY
PERKINS

**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>AFFIRMING</u>**

The issue in this case is whether Jerry and Bessie Perkinses'

homeowner's insurance with State Farm Fire and Casualty Insurance

Company provided coverage as to Bessie's in-home child care services. The

Madison Circuit Court granted summary judgment in favor of State Farm, and

the Court of Appeals affirmed. We likewise affirm.

## I. Factual and Procedural Background

Two couples, Donald and Julie Thomas and Jeffrey and Elizabeth Renner, were each expecting a child. Jerry Perkins informed Donald Thomas that Jerry's wife, Bessie, had been recently dismissed from her position at ABC Daycare and was looking to provide childcare services in her home at a rate of eighty dollars per week. Jerry told Donald that Bessie's termination was a result of the company's decision to terminate older employees because they commanded higher compensation. This statement was a lie. Shortly thereafter, Donald informed Jeffrey Renner of the Perkinses' offer.

Both couples agreed to the proposed arrangement and Bessie Perkins began caring for S.T. and C.R. in the summer of 2015. In November 2015, Jeffrey noticed that C.R. appeared sick when he collected the child from the Perkinses' home. When C.R. had not improved by the morning, the Renners took him to the pediatrician, where C.R. began twitching. Following a battery of tests, the pediatrician diagnosed C.R. with "shaken baby syndrome." The diagnosis prompted a report to social services and a law enforcement investigation, in which a forensic physician diagnosed the Thomas child, S.T., with two leg fractures.

In the resulting civil action against Bessie and Jerry Perkins, the Renners claimed that C.R. suffered permanent brain damage, among other

conditions, which was the direct result of the Perkinses' conduct.[1]  As the Perkinses' insurer, State Farm filed an intervening complaint, seeking summary judgment on grounds that the Perkinses' behavior implicated the "child care services exclusion," relieving State Farm of liability.  Meanwhile, the Thomases filed a separate complaint against the Perkins, alleging negligent behavior by both Perkins and grossly negligent behavior by Bessie.  State Farm, similarly, sought summary judgment as to the Thomases' case.  The Madison Circuit Court entered a declaratory judgment in State Farm's favor as to both sets of plaintiffs, finding that the child care services exclusion applied.[2]

In the consolidated appeal which followed, the appellants challenged only the coverage determinations as to Jerry Perkins.  The Court of Appeals affirmed the trial court's application of the child care exclusion as to him.  Thereafter, this Court granted discretionary review.

## II. Standard of Review

On appeal, the standard of review for a summary judgment is to ascertain whether the trial court correctly determined that no genuine issue of material fact existed, entitling the moving party to judgment as a matter of law. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky. 2010).  In

---

[1] The concurrent criminal action against Bessie Perkins ended when she pled guilty to assault in the first degree and two counts of criminal abuse in the first degree for which she is currently serving a prison sentence.

[2] Additionally, the trial court determined that State Farm's "intentional acts exclusion" precluded coverage for claims regarding Bessie's  conduct.  The trial court also granted summary judgment in favor of State Farm on the bad faith claims. Neither plaintiff appealed either decision.

3

conducting our review, we give no deference to the rulings below because only legal questions are involved. *De novo* review extends to the trial court's interpretation of the insurance contract as a matter of law. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.,* 306 S.W.3d 69, 73 (Ky. 2010).

Additionally, we adhere to our long-held standard that when we interpret insurance contracts, perceived ambiguities and uncertainties in the policy terms are generally resolved in favor of the insured. *Kentucky Ass'n of Cnties. All Lines Fund Tr. v. McClendon,* 157 S.W.3d 626, 630 (Ky. 2005). When analyzing challenged terms for clarity we note that the terms of insurance contracts have no technical legal meanings and must be reasonably interpreted as they would be understood by a lay reader. *Id.* If, after our analysis, we determine that the policy is unambiguous and reasonable, then the contract terms will be enforced. *Id.*

### III. Analysis

Appellants assert that because they only appealed with regards to Jerry, we must interpret the policy exclusion at issue as either inclusive, providing coverage; or ambiguous, providing coverage.[3] We disagree.

---

[3] Notably, neither Jerry nor Bessie Perkins is claiming insurance coverage in this appeal.

4

Our analysis begins by addressing the relevant policy language.[4] In section II of the policy—entitled EXCLUSIONS— State Farm excludes coverage for:

> [A]ny person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of:
>
> (a) any insured;
>
> (b) any employee of any insured; or
>
> (c) any other person actually or apparently act[]ing on behalf of any insured.
>
> This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 19 years of age[.]

Despite Appellants' assertions to the contrary, the term "any insured" is unambiguous. Applying the analytical framework laid out in *McClendon,* that insurance terminology does not carry the imprimatur of a legal definition, we must interpret the policy as a reasonable lay consumer would. 157 S.W.3d at 630. In doing so we note that no ambiguity exists as to who the "insured[s]" are because both Jerry and Bessie were specifically named in the policy declarations as an "insured". Similarly, in context, "any" cannot be defined arcanely, as Appellants insist, to apply to Jerry and Bessie as if they carried two identical, but separate, policies from State Farm.

Instead, the far more natural reading of the exclusion is that it applies to either Perkins in providing regular child care services at their home. The

---

[4] The policy also includes a more general "business pursuits" exclusion. However, State Farm has chosen not to rely on that exclusion in its defense and consequently we do not review the applicability of the provision.

regularity of care, for profit, and at the Perkinses' home by Bessie clearly invoked the policy exclusion. Given these facts, Jerry's actions are quite simply immaterial to the question before us.

Our reasoning comports with long-standing federal and state court precedent. *Sales v. State Farm Fire & Casualty Co.* defined "any insured" as "unambiguously express[ing] a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured." 849 F.2d 1383, 1385 (11th Cir. 1988) (citing *Spezialetti v. Pacific Emps. Ins. Co.*, 759 F.2d 1139 (3rd Cir. 1985)). *See also State Farm Fire & Casualty Co. v. Davis*, 612 So.2d 458, 466 (Ala. 1993).

In *Thoele v. Aetna Cas. & Sur.*, 39 F.3d 724 (7th Cir. 1994), the Seventh Circuit faced a similar factual scenario. In that case, Sharon Thoele was operating a child care service out of her home when a child began choking. Her husband, who had no connection to her business, attempted to provide emergency care. Although the child survived, she suffered permanent injuries because of the incident. *Id.* at 725. Just as the Perkins, the Thoeles only carried a homeowner's policy. *Id.*

The district court dismissed the plaintiff's action in *Thoele* reasoning that, despite Sharon's husband having no relationship with her business, the policy's language excluded coverage for injuries "arising out of business pursuits of any insured." *Id.* at 726. The Seventh Circuit affirmed, agreeing with the district court's reasoning that by using the term "any" the insurance company "broadened the exclusion to include injuries triggered by one insured

6

in connection with the business pursuit of another." *Id.* at 727. We find that reasoning persuasive.[5]

Next, Appellants argue that the inclusion of the severability clause in the Perkins's homeowner's policy operates to return coverage at least for Jerry.[6] We disagree. In *K.M.R. v. Foremost Ins. Group*, our Court of Appeals upheld an exclusion despite the existence of a severability clause. 171 S.W.3d 751, 755 (Ky. App. 2005). In doing so the court reasoned that "a clearly worded exclusion is not treated as ambiguous or rendered unclear by the mere existence of a severability provision." *Id.* The court's reasoning continued, stating, "the purpose of severability clauses . . . is not to negate bargained-for exclusions which are plainly worded." *Id.* (quoting *Natl. Ins. Underwriters v. Lexington Flying Club, Inc.*, 603 S.W.2d 490, 492 (Ky. App. 1980) (internal citation omitted)).

Five years later, our appeals court revisited the question of severability clauses. *Holzknecht v. Kentucky Farm Bureau Mut. Ins. Co.*, 320 S.W.3d 115 (Ky. App. 2010). Another case involving an at-home daycare service, Sarah Holzknecht sued the Mays when her daughter was mauled by the Mays' family dog. As in the present case, the insurer sought summary judgment based on an exclusionary provision in their homeowner's policy. The trial court granted

---

[5] Although no longer material to the case, we note that the exception to the exclusionary language is inapplicable here because our conclusion is based on Bessie's actions and does not require us to resolve whether the exception for "occasional" childcare would reinstate Jerry's coverage.

[6] The severability clause reads: "This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence."

summary judgment and the Court of Appeals denied Holzknecht's claims, reasoning that a severability clause does not operate to expand coverage or shrink valid, bargained for, exclusions. *Id.* at 122. The panel concluded that "[s]ince severability clauses are not drafted to negate policy exclusions, the existence of that clause in [the insurer's] policy does not render the exclusion ambiguous." *Id.* We endorse this reasoning. Likewise, here, the severability clause does not fill the gaps in coverage created by the Perkinses' own conduct.

Finally, we address Appellants' concern that by affirming the trial court we are rendering insurance coverage illusory and negating the Perkinses' reasonable expectations when they purchased their homeowner's insurance.[7] Neither argument is persuasive. Illusory coverage applies when an insurer's interpretation of a contract term would deny the insured "most if not all of a promised benefit." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. App. 2012) (internal citations omitted). The child care exclusion was clear, and no testimony was presented by either policy holder that the coverage was intended to extend to a daycare service in the home. Similarly, Appellants' reasonable expectations claim fails because, as we have already discussed, the childcare exclusionary language was not ambiguous, and the reasonable expectations doctrine "applies only to policies with ambiguous terms." *Metzger*

---

[7] Appellants' public policy claim is similarly ineffective. While we agree that promoting the health and safety of our children is always paramount, Appellants have categorically failed to show how making State Farm liable under these facts would effectuate such an outcome.

*v. Auto-Owners Ins. Co.*, 607 S.W.3d 695, 699 (Ky. 2020) (quoting *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003)).

## IV. Conclusion

For the reasons discussed above, the Court of Appeals' opinion affirming the trial court's summary judgment in favor of State Farm is affirmed.

All sitting.  All concur.

COUNSEL FOR APPELLANTS,
JULIE G. THOMAS AND DONALD
F. THOMAS, INDIVIDUALLY AND
AS NEXT FRIEND FOR S.T., A MINOR:

Kevin Crosby Burke
Jamie Kristin Neal
Burke Neal, PLLC

Michael Faulkner Eubanks
Shumate, Flaherty, Eubanks & Baechtold, P.S.C.

COUNSEL FOR APPELLANTS,
ELIZABETH RENNER AND
JEFFERY RENNER, AS NEXT FRIEND
AND PARENT OF C.R., A MINOR:

Kevin Crosby Burke
Jamie Kristin Neal
Burke Neal, PLLC

Zachary LeRoy Taylor
Taylor Couch, PLLC


COUNSEL FOR APPELLEE,
STATE FARM FIRE AND CASUALTY:

David T. Klapheke
Boehl Stopher & Graves, LLP

COUNSEL FOR APPELEES,
BESSIE PERKINS AND
JERRY PERKINS:

Douglas Loy Hoots
Miller, Griffin & Marks, P.S.C

Joseph Stan Lee
Sturgill, Turner, Barker & Moloney, PLLC