RENDERED:  JANUARY 21, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0374-MR

MEGAN WEBB AND KAYLA WEBB                          APPELLANTS

v.
APPEAL FROM MONTGOMERY CIRCUIT COURT
HONORABLE WILLIAM EVANS LANE, JUDGE
ACTION NO. 20-CI-90134

KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CETRULO AND McNEILL, JUDGES.

CETRULO, JUDGE:  This is an appeal from a Montgomery Circuit Court order

granting a summary judgment for declaratory relief.  The circuit court found the

appellants, Megan and Kayla Webb ("the Webbs"), were operating a

childcare/daycare business out of their home when a child was allegedly injured

while on their premises and under their care.  The trial court found the appellee,

Kentucky Farm Bureau Mutual Insurance Company ("KFB"), is not required to provide liability coverage to or defend the Webbs in the underlying cause of action (a personal injury suit) because the circumstances surrounding the alleged injury were excluded by the terms and conditions of their homeowner's insurance policy. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are straightforward, but troubling. In January 2017, the Webbs began offering childcare services in their home. The Webbs owned the home and had purchased homeowner's insurance prior to starting this business venture. The Webbs advertised through word of mouth and on social media. The Webbs charged $20 per child per day or $100 per child per week.

In September 2017, a mother arrived at the Webbs' home to find her five-month-old child with an indented skull and facial bruising. While denying the injury occurred on the premises within the context of the civil lawsuit, Megan Webb pled guilty to criminal abuse in the second degree in the criminal case.

After the child's injury, a lawsuit was filed against the Webbs on behalf of the injured child. The Webbs notified their insurer, KFB, of the claim. The insurer provided counsel to defend the Webbs in the underlying litigation but then filed this separate action for declaratory judgment pursuant to three homeowner's insurance policy exclusions: (1) no liability coverage for the

operation of a "business" on the insureds' property, (2) no liability coverage for the operation of an "at-home daycare" on the insureds' premises, and (3) no liability coverage for bodily injury caused by intentional acts.

The relevant Homeowner's Policy terms and conditions provide as follows:

**SECTION II EXCLUSIONS**

1.  **Coverage E - Personal Liability** . . . does not apply to **"bodily injury"** or **"property damage:"**

    a.  Which is expected or intended by one or more **"insureds";**

    b.  Arising out of or in connection with a **"business"** engaged in by an **"insured."** This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business";**

        . . . .

    n.  Arising out of the home day care business. If an insured regularly provides home day care services to a person or persons other than insureds and receives monetary or other compensation for such services, that enterprise is a business pursuit. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an insured to a relative of an insured is not considered a business pursuit.

Therefore, with respect to a home day care enterprise which is considered to be a business pursuit, this policy:

1) Does not provide SECTION II - LIABILITY COVERAGES because business pursuits of an insured are excluded under exclusion 1.b. of Section II Coverages - Exclusions[.]

The Webbs challenged the enforceability of the exclusions of the homeowner's insurance policy, but the trial court found the exclusions to be valid and applicable, granting KFB's motion for summary judgment "against both [Webbs] on the business and child-care exclusions and on the physical abuse exclusion as to Megan Webb."

## STANDARD OF REVIEW

The Kentucky Supreme Court clearly states the applicable standard of review:

In cases in which the trial court has granted summary judgment in a declaratory judgment action and no bench trial is held, we use the appellate standard of review for summary judgments.

When reviewing a trial court's grant of summary judgment, we determine whether the record supports the trial court's conclusion that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to the trial court's

assessment of the record or its legal conclusions. The interpretation of insurance contracts is a matter of law, so our review is *de novo*.

*Foreman v. Auto Club Property-Casualty Insurance Co.*, 617 S.W.3d 345, 349 (Ky. 2021) (internal quotation marks and citations omitted). *See also* Kentucky Rule of Civil Procedure (CR) 56.03.

## ANALYSIS

The Webbs argue that their homeowner's insurance policy exclusions should be nullified because the contract is an adhesion contract with ambiguous and/or conflicting terms. "A contract of adhesion is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Schnuerle v. Insight Communications Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012) (quoting *Patterson v. ITT Consumer Financial Corp.*, 14 Cal. App. 4th 1659, 1664, 18 Cal. Rptr. 2d 563, 564 (1993)). Courts have been willing to scrutinize adhesion contracts and have refused to enforce egregiously abusive ones. *Schnuerle*, 376 S.W.3d at 576 (citing *Jones v. Bituminous Casualty Corp.*, 821 S.W.2d 798 (Ky 1991)).

Specifically, the Webbs argue that their contract includes two separate lists of exclusions, on two different pages, several pages apart. They argue the contract provided "no definitions or other clarifying language, which would

explain to a consumer with ordinary experience and education, the difference in the two lists of exceptions." (Emphasis omitted.) The Webbs refer this Court to *Schnuerle*, 376 S.W.3d 561; however, in *Schnuerle* the Kentucky Supreme Court held that adhesion contracts can be subject to abuse but are not *per se* improper. *Id.* at 576. In fact, the Court upheld the contract in *Schnuerle* because the clause was not concealed or disguised, and the contract was written so a person of ordinary experience and education could understand it. *Id.* The Webbs' exclusions included herein are likewise clear and in plain language to provide the homeowners with knowledge that certain actions would be excluded from coverage.

Further, the fact that exclusions appear on different pages of the policy is certainly not grounds to find a conflict or to conclude that the insureds were not fully advised of the exclusions under the policy. The Webbs cite to no law in support of this argument and we have not found any either.

The Webbs recognize the similarities of this case with the opinion of this Court in *Holzknecht v. Kentucky Farm Bureau Mutual Insurance Company*, but they assert that the facts are distinguishable. 320 S.W.3d 115 (Ky. App. 2010). We do not find the cases disparate; rather, we find *Holzknecht* to be consistent and dispositive herein. In *Holzknecht*, the insureds were similarly operating an at-home daycare business on the insured premises. A dog kept at the home attacked a

child who was there for daycare services. As in this case, the mother of the child filed suit and KFB provided a defense under reservation of rights before moving for a declaratory judgment action stating that there was no coverage. It is clear from a reading of that case that the policy exclusions were equivalent to those contained in the Webbs' policy. In *Holzknecht*, the trial court granted KFB summary judgment and this Court agreed, holding that "[t]he terms of the policy are unambiguous and specifically exclude the coverage that Holzknecht seeks." *Holzknecht*, 320 S.W.3d at 119.

KFB points this Court to the three policy provisions that specifically exclude coverage for the Webbs: (1) the on-premise "business" exclusion, (2) on-premise "at-home daycare" exclusion, and (3) bodily injury caused by intentional acts exclusion. The Webbs do not specifically dispute the applicability of these three exclusions.

First, KFB argues the Webbs' daycare was an on-premise business excluded by their policy; we agree. In *Eyler v. Nationwide Mutual Fire Insurance Company*, 824 S.W.2d 855, 859 (Ky. 1992), the Kentucky Supreme Court adopted a two-part test for determining whether activities may be considered business pursuits:

> To constitute a business pursuit, there must be two elements: first, continuity, and secondly, the profit motive; as to the first, there must be a customary engagement or a stated occupation; and as to the latter,

> there must be shown to be such activity as a means of livelihood, a gainful employment, means of earning a living, procuring subsistence or profit, commercial transactions or engagements.

*Id.* (quoting *Krings v. Safeco Ins. Co.*, 6 Kan. App. 2d 391, 628 P.2d 1071, 1074 (1981)).

We find the daycare business to be both continuous and profit driven. The Webbs started offering childcare services after Megan Webb quit her job; the daycare operated continually with seven to ten children in attendance in their home per week; and the Webbs charged a flat fee per child. We see no reason to believe the Webbs' daycare was not a "business" falling within the terms of the policy.

Second, the Kentucky Supreme Court has also found insurance policies excluding childcare services to be valid. *Thomas v. State Farm Fire and Casualty Co.*, 626 S.W.3d 504 (Ky. 2021). In *Thomas*, the Kentucky Supreme Court found the childcare exclusionary language was not ambiguous and concurred with the holding in *Holzknecht*. *Thomas*, 626 S.W.3d at 508-09.

Third, we agree with the trial court that liability coverage is further excluded under this policy for "bodily injury that is the result of expected or intended injuries by one or more of the 'insureds.'" As to Megan Webb at least, there was a criminal conviction on a guilty plea. Intentional acts are expressly excluded from the homeowner's policy and this Court has previously held that

-8-

intention can be inferred in a case such as this.[1]  *Walker v. Economy Preferred Ins. Co.*, 909 S.W.2d 343, 345 (Ky. App. 1995).

Even adhering to the long-held standard that when we interpret insurance contracts, perceived ambiguities and uncertainties in the policy terms are generally resolved *in favor of the insured* (*Kentucky Association of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005)), we find the exclusions listed in the Webbs' homeowner's policy *do* deny them coverage herein.  We believe that the aforementioned authorities, interpreting identical or nearly identical exclusions in homeowner's insurance contracts, confirm that the exclusions are valid, enforceable, and not disguised or ambiguous.  One does not have to be an attorney to understand that operating a daycare business within one's home and pleading guilty to causing an injury to a child would not fall within the reasonably expected coverages insured by a homeowner's insurance company.  We do not find the Webbs' homeowner's insurance policy to be procedurally unconscionable or egregiously abusive.

---

[1] This Court has recognized that intent may be inferred as a matter of law in certain circumstances.  For example, in *Walker*, this Court upheld a summary judgment applying a policy exclusion to deny coverage to the plaintiff who was injured after being hit in the face by the insured.  *Walker*, 909 S.W.2d 343.  This Court observed in *Walker* that striking another in the face is "an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm[.]" *Walker*, 909 S.W.2d at 345 (citing *Clark v. Allstate Insurance Company*, 22 Ariz. App. 601, 529 P.2d 1195, 1196 (1975)).

**CONCLUSION**

Having reviewed the record, we find no genuine issues as to any material fact. KFB is entitled to judgment as a matter of law, and therefore, we AFFIRM the Montgomery Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:   BRIEF FOR APPELLEE:

Robert W. Miller      R. Craig Reinhardt
Grayson, Kentucky      Lexington, Kentucky