**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4824-17T4

LORRAINE COOPER,

    Plaintiff-Appellant,

v.

CNA INSURANCE COMPANY,

    Defendant-Respondent.

_____

> Argued October 3, 2019 – Decided November 12, 2019
>
> Before Judges Koblitz, Whipple, and Mawla.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6082-17.
>
> Stephen F. Pellino argued the cause for appellant (Basile Birchwale & Pellino, LLP, attorneys; Stephen F. Pellino, on the briefs).
>
> Evan Yablonsky argued the cause for respondent (Bressler, Amery & Ross, PC, attorneys; Samuel J. Thomas, on the brief).

PER CURIAM

Plaintiff Lorraine Cooper appeals from an April 23, 2018 order granting defendant CNA Insurance Company's motion for summary judgment and a June 8, 2018 order denying her motion for reconsideration. We affirm.

Defendant[1] issued a policy of long-term care insurance to plaintiff for an initial term of December 19, 1997, to December 19, 2012, which plaintiff renewed and which remained in effect at all times relevant to this matter. At some point, plaintiff developed dementia; precisely when is not apparent from the record. Betty Kaunga, who had previously served as an aide to plaintiff's husband, began to care for plaintiff in plaintiff's home. Ms. Kaunga is not a licensed health care professional.

On January 20, 2017, defendant sent a copy of the long-term care policy to plaintiff at plaintiff's request. The first page of the policy contained a paragraph at the bottom, titled "NOTICE TO BUYER," which indicated that "[t]his policy may not cover all of the costs associated with long-term care incurred by [y]ou during the period of coverage. You are advised to review carefully all policy limitations." Sometime in March 2017, plaintiff applied for benefits under the policy for the cost of the in-home services of Ms. Kaunga

---

[1] The subsidiary that issued the policy was Continental Casualty Company.

under the "Home and Community-Based Care" clause.[2]  Defendant denied

plaintiff's request for benefits because Ms. Kaunga was not licensed and did not

otherwise qualify as a "Home Health Care Agency," as was required under the

"Home and Community-Based Care Benefit."  This denial of benefits is not in

dispute.  Shortly after this first denial, plaintiff, through her son, requested

coverage for Ms. Kaunga's care under the "Alternate Plan of Care" (APC)

provision in her policy.[3]

Under the policy terms, "PLAN OF CARE" is defined under Section One,

"DEFINITIONS OF IMPORTANT TERMS," as "[a] program of care and

treatment: 1. Initiated by and approved in writing by a Licensed Health Care

Practitioner before the start of such care and treatment; and 2. confirmed in

writing at least once every [sixty] days."

Under the section titled "[APC] BENEFIT," the policy states that

> If [y]ou would otherwise require a [l]ong-[t]erm [c]are
> [f]acility stay under a Plan of Care, [w]e may pay for
> alternate services, devices or types of care under a
> written [APC], if such plan is medically acceptable.
> This [APC]: 1. must be agreed to by [y]ou, [y]our
> physician, and [u]s; and 2. will be developed by or with

---

[2]  We have not been provided with that correspondence, so we do not know specifically what she requested.

[3]  We have not been provided with this request, so we do not know what, if anything, was submitted to support the request.

A-4824-17T4

[l]icensed [h]ealth [c]are [p]rofessionals. Any plan, including the benefit levels to be payable, may be adopted, as long as it is mutually agreeable to [y]ou, [y]our physician and [u]s. The [c]ompany is not obligated to provide benefits for services received prior to such agreement . . . [t]his plan may specify special treatments or different sites or levels of care. Some of the services [y]ou may receive may differ from those otherwise covered by [y]our policy. In this case, benefits will be paid at the levels specified and agreed to in the [APC].

Defendant denied plaintiff's request under the APC, stating that the APC provision

is generally designed to address unusual and unforeseen circumstances where an insured requires confinement in a qualified facility, but for reasons particular to the insured's situation, an alternative to that confinement may be necessary. This primarily occurs where covered services are not available to the policyholder in his or her area. In those situations, we may consider providing coverage for a non-qualifying provider in an area where there are no qualifying home health care agencies available. Such is not the case here.[4]

The letter also noted "pursuant to the plain terms of the APC provision, it is within our discretion whether to agree to such a plan," that the APC is not a guaranteed benefit, and pointed plaintiff instead to a provision of her coverage that includes a "Home and Community-Based Care Benefit" for the services of

---

[4] This explanation is not included anywhere in plaintiff's policy.

A-4824-17T4

a policy-defined "Home Health Care Agency." The letter also included an excerpt of the policy explaining the definition of "Home Health Care Agency."

The letter further stated that

> [i]f you feel that the information we received is incorrect or incomplete, you may request a review of this denial by writing to CNA Insurance Companies. The written request for review must be sent within [sixty] days of receipt of this letter. Please state the reason why you feel your claim should not have been denied and submit any appropriate data or additional medical information to support your position. Please forward your request for a management review to the following address . . . .

Shortly thereafter, plaintiff engaged an attorney to represent her in connection with the denial of benefits. Plaintiff's attorney sent a letter to defendant requesting a review of the denial of benefits, but rather than stating the reason the claim should not have been denied and submitting "any appropriate data or additional medical information" to support plaintiff's position in accordance with the instructions in the denial letter, plaintiff instead asked permission to submit more information, along with a request for documents. Plaintiff's letter stated

> We believe that you have not been provided with complete information concerning the request for benefits and we would like an opportunity to present further information to you. We verily believe that [plaintiff] qualifies for the [APC] benefit and are

5

requesting the opportunity to present information to you in support of that claim.

The letter also requested, "[w]hile we begin to gather that further information to submit to you," that defendant send a copy of the policy issued to plaintiff, as well as copies of all documents submitted to defendant by plaintiff and her son in support of the denied claims. Additionally, the letter asked for copies of "any and all" information compiled by defendant and on which defendant based its denials, "including the results of any interviews, tests or other investigations performed by [defendant]." While plaintiff asserts she never received anything, defendant asserts it sent a letter by UPS, along with copies of the policy and documents received and considered by defendant prior to issuing its coverage determination, and that UPS tracking shows the parcel delivered and signed for.

A little over three months after the denial of benefits under the APC provision, Dr. Manisha Parulekar wrote a one page letter "To Whom It May Concern," stating that plaintiff had been diagnosed with dementia, that she would benefit from around the clock care from Betty Kaunga, that "[t]his is the preferable plan of care as defined by the conditions of the [APC] benefit provision" and that "[a]lternatively, she would need to be admitted to a long term care facility." However, plaintiff never submitted this letter directly to

6

defendant, either in support of plaintiff's initial claim or with a request for review of the claim.

Instead, on September 8, 2017, plaintiff filed a complaint against defendant in the Law Division, alleging that the denial of benefits constituted a breach of contract, causing plaintiff damages. Plaintiff also alleged defendant acted in bad faith and breached its duty to act in good faith toward plaintiff through its denial of the claim "for false and fallacious reasons, refusal to acknowledge a request for review of that denial, failure to provide the insured with a full copy of the policy, failure to otherwise respond to the reasonable inquiries of the insured, and for denying benefits when they are otherwise payable," causing plaintiff damages. Defendant filed a motion to dismiss and for summary judgment pursuant to Rule 4:6-2(e) and 4:46-1, that the court heard on April 13, 2018.

The trial court granted defendant summary judgment, finding it was clear that defendant was not required to provide APC benefits for services received before an agreement was reached among plaintiff, her doctor, and defendant, as per the terms of the policy, and that the issue concerned the potential coverage for services received after the denial of the APC claim. The trial court found no ambiguity in the contract, that the policy was clear the APC must be agreed to

by the plaintiff, her physician, and defendant, and that the policy was written in simple prose, in 12-point font using short paragraphs, and was easily understandable. The trial court further found the APC provision was not illusory since plaintiff would be entitled to benefits under one of the other provisions in the policy. Relying on Dr. Parulekar's letter stating plaintiff did otherwise require a long-term care facility stay, the trial court found defendant was under no obligation to enter an APC with plaintiff because it was contingent upon Ms. Kaunga providing the care, and those services were not pursuant to a "Plan of Care" as required by the policy either before or after the claim denials.

The trial court also found additional discovery would not alter the outcome, since there was no agreement nor an obligation for defendant to consider plaintiff's request, and because the care sought was not covered under the policy. The trial court also found that the bad faith claim failed under the "fairly debatable" standard, since plaintiff could not establish the breach of contract claim as a matter of law.

Shortly thereafter, Dr. Parulekar prepared a certification explaining her prior letter, stating she intended the letter to be a written plan of care for plaintiff, opining that Ms. Kaunga was in a unique position to render care to plaintiff because of their long-term relationship, and that if anyone other than

Ms. Kaunga were to care for plaintiff, plaintiff would need to be admitted to a long-term care facility.

Plaintiff then moved for reconsideration of the trial court's order and opinion granting defendant summary judgment, presenting Dr. Parulekar's certification in support of the motion. After oral argument, the trial court denied the motion for reconsideration, clarifying that its decision was not based on the fact that Ms. Kaunga was not licensed, but was based on the finding that the APC provision was not illusory, that defendant's denial of the APC was not arbitrary, unreasonable nor capricious as there were facilities available in the vicinity, and that plaintiff's situation did not meet the special conditions necessary for the defendant to agree to an APC. This appeal followed.

In reviewing summary judgment, we use the same standard as the trial court. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citations omitted). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The evidence must be viewed in "the light most favorable to the non-moving party[.]" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524

(2012) (citations omitted). Generally, where discovery is not complete, summary judgment is not appropriate. See Crippen v. Cent. Jersey Concrete Pipe Co., 176 N.J. 397, 409 (2003) (citations omitted); Laidlow v. Hariton Mach. Co., 170 N.J. 602, 619 (2002) (citations omitted).

If the case "presents no material factual disputes, the court simply applies the appropriate law to the facts." Kopin v. Orange Prods., Inc., 297 N.J. Super. 353, 366 (App. Div. 1997) (citation omitted). In reviewing a trial court's application of the law, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995) (citation omitted).

On appeal, plaintiff argues that whether defendant's denial of plaintiff's APC proffered by Dr. Parulekar was reasonable is a question of fact that requires further discovery and a determination on the merits. Plaintiff further argues the trial court ruled she did not meet the terms of the contract based on conditions not contained in the insurance policy, and that the trial court interpreted the contract to give defendant "unfettered discretion" to deny plaintiff's claim. Plaintiff argues these holdings are contrary to New Jersey law, which imposes a higher, fiduciary standard to insurers as to first-party claims.

A-4824-17T4

We review the trial court's legal determinations de novo, including its construction of an insurance contract. Polarome Int'l v. Greenwich Ins. Co., 404 N.J. Super. 241, 259-60 (App. Div. 2008) (citations omitted). An insurance policy's words should be given "their plain, ordinary meaning." President v. Jenkins, 180 N.J. 550, 562 (2004) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)). However, because insurance policies are contracts of adhesion, ambiguous language in an insurance policy "is often construed in favor of the insured." Id. at 562-63 (citations omitted). Where an insurance policy's language "fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage," and where an ambiguity exists, courts should interpret the policy to meet the reasonable expectations of the insured party. Id. at 563 (citations omitted). "Language in a policy of insurance is genuinely ambiguous only if the 'phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Argent v. Brady, 386 N.J. Super. 343, 352 (App. Div. 2006) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)). Courts may also enforce unambiguous insurance policies according to reasonable expectations of the insured if a policy is complex, highly technical, extremely difficult to understand, insufficiently clear, or misleading. Sparks v.

St. Paul Ins. Co., 100 N.J. 325, 335-36 (1985) (citations omitted); DiOrio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269 (1979). However, where policy terms are clear,[5] the policy should be interpreted as written, and courts should "avoid writing a better insurance policy than the one purchased." President, 180 N.J. at 562 (citing Gibson v. Callaghan, 158 N.J. 662, 670 (1999)).

Here, we do not construe the terms in the policy, either in the definitions or in the APC provision, as ambiguous or as fairly supporting two meanings, one favoring defendant and one favoring plaintiff. We also do not construe the terms in the APC provision as complex, highly technical, extremely difficult to understand, insufficiently clear, or misleading. Rather, the "Plan of Care" definition is in simple, non-technical language, and it clearly states that a plan of care is to be initiated and approved in writing by a "Licensed Health Care Practitioner" before the start of care and treatment.

The "[APC] Benefit" explanation is also in simple, non-technical language, and uses the conditional language "may" and "if" regarding defendant's potential payment of this type of coverage. The mandatory "must" is used for the requirement that plaintiff, her physician, and defendant all agree,

---

[5] See N.J.S.A. 17B:17-21 for statutory readability requirements for insurance policies.

along with forward-looking language stating the plan "will be developed," indicating it is meant for impending or future treatment, not past treatment that has been ongoing for years. There are two requirements: 1) the plan must be agreed to by plaintiff, her physician, and defendant, and 2) the plan will be developed by or with licensed health care professionals. The very next sentence clearly states that defendant is "not obligated to provide benefits for services received prior to such agreement."

The policy is clearly written in plain language, can be easily read, and there are no terms that could be read to "fairly support two meanings" or that could be described as technical, complex, or misleading. Therefore, because it is clear and unambiguous, the policy here does not warrant looking beyond the plain meaning to determine the objectively reasonable expectations of plaintiff.

Looking then to the plain language of the policy, as President, 180 N.J. at 562, instructs, it is clear plaintiff was required to obtain a plan of care, initiated and approved in writing by a licensed health care professional, before the start of care; that plaintiff had to otherwise require a long-term care facility stay under a plan of care; that defendant may have paid for an APC if it were determined to be medically acceptable; and that it must have been agreed to by plaintiff,

plaintiff's doctor, and defendant, as well as developed by or with licensed health care professionals.

Here, since plaintiff received a copy of the policy from defendant at her request, before filing her claims, we presume she or her representative read and reviewed the policy. We do not know what, if anything, plaintiff submitted in support of her initial application for coverage under the APC, but she did not submit the letter or the certification from Dr. Parulekar, which is the only evidence plaintiff presents in support of APC coverage. Thus, Dr. Parulekar's letter and certification were not available for defendant to consider when making the initial decision about whether the plan was medically acceptable for APC coverage. Neither were they available for defendant to consider along with plaintiff's later letter, nor were they sent with a request to review the denial of the APC claim as instructed in defendant's denial letter. Rather, Dr. Parulekar's letter was only submitted to the court after plaintiff initiated litigation. Therefore, not only was there no agreement among plaintiff, her doctor, and defendant before plaintiff began receiving care from Ms. Kaunga as required by the plain terms of the policy—or when plaintiff submitted her application for potential future coverage under the APC—but plaintiff cannot demonstrate a plan of care existed with which defendant could agree, either at the time the

claim was submitted or when plaintiff disputed the claim denial. Therefore, plaintiff did not meet the requirements plainly set out in the language of the contract, and hence we discern no error in the entry of summary judgment.

Plaintiff argues that summary judgment was premature because the discovery period had not ended, and that whether defendant's denial of plaintiff's APC proffered by Dr. Parulekar was reasonable is a question of fact that requires further discovery and a determination on the merits. Plaintiff also argues that there should have been a "back and forth" between plaintiff and defendant, along with further discovery, to find whether plaintiff qualifies for the APC based on Dr. Parulekar's letter. We disagree.

Any discovery related to Dr. Parulekar's plan had no bearing on the undisputed fact that there was no agreement among plaintiff, her doctor, and defendant for Ms. Kaunga to provide care at the time of the denial of plaintiff's APC claim as required by the plain terms of the contract. Moreover, we discern no reason why plaintiff is foreclosed from further discussions and development of an APC directly with defendant going forward, if she so chooses.

We also reject plaintiff's argument that the position taken by defendant in its APC denial letter, that the APC is generally designed to cover instances where an insured may require confinement in a qualified facility but there are

15

no qualifying facilities available, goes beyond the requirements listed in the policy and that this is contrary to New Jersey law.

In its order denying reconsideration, the trial court explained its decision was based on the finding the APC provision was not illusory because the availability of other qualifying facilities in the area demonstrated plaintiff was never foreclosed from other benefits under the policy. Because these other benefits were available, the policy was not illusory, and defendant's decision was not arbitrary, unreasonable, nor capricious. Further, although the reasons given in the denial letter are not specifically contained in the plain terms of the policy, the denial letter does not state that these are the actual reasons, specific to plaintiff, that her claim is being denied. Rather, the letter states that the APC is "generally" designed to address unusual circumstances and that it "primarily occurs" when covered services are not available to an insured. And again, at the time it issued its denial letter to plaintiff, defendant did not have Dr. Parulekar's letter, or any other plan of care documentation.

Finally, although we agree proper construction of the insurance policy provision for the APC requires defendant to act reasonably in considering an APC, plaintiff has not demonstrated that defendant did not act reasonably. Plaintiff argues it was unreasonable for defendant not to investigate when it

denied plaintiff's APC claim, and that defendant "turned a deaf ear to Dr. Parulekar's report that would support the claim of the insured." However, defendant did not "turn a deaf ear" to Dr. Parulekar's letter when considering plaintiff's APC claim, as it did not have the letter, only receiving it as a document in litigation after plaintiff filed suit. Further, plaintiff offered no evidence that defendant did not act reasonably in denying plaintiff's claim because plaintiff has not shown what, if anything, was submitted to defendant in support of the application for APC coverage. The only documents plaintiff has produced in support of her claim of defendant's unreasonable abuse of discretion are Dr. Parulekar's letter and certification, which it is undisputed were never submitted to defendant directly for consideration.

We have carefully reviewed the record regarding all remaining arguments and have determined they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4824-17T4